## ESTATE OF LEWIS DEAVES, DECEASED.

APPEAL BY HANNAH B. DEAVES FROM THE ORPHANS' COURT
OF DELAWARE COUNTY.

Argued February 9, 1891—Decided February 23, 1891.
[To be reported.]

1. When it is shown that a will was in existence, unrevoked, at the time of the testator's death, and was afterwards lost or destroyed, its contents may be proved by parol and the will thus reproduced admitted to probate: Foster's App., 87 Pa. 67 ; but the proof of the contents should be very clear, especially when the will is set up, in part at least, by the testimony of interested witnesses : Per Mr. Chief Justice PAXSON.

2. When, however, there is no proof that a will actually executed was in existence, unrevoked, at the testator's death, but, on the contrary, it was admittedly lost in his lifetime, and yet, with knowledge thereof for months before his death, the testator declined or neglected to reproduce and republish its contents, its revocation may fairly be presumed and probate of it refused.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and WILLIAMS, JJ.

No. 149 July Term 1890, Sup. Ct.; court below, number and term not given.

On December 2, 1889, Hannah B. Deaves filed with the register of wills a petition, verified by her affidavit, averring that the petitioner's husband, Lewis Deaves, died on October 18, 1889, leaving a widow, the petitioner, and one son, George Deaves, a minor, having as his guardian Florence Lockwood; that the decedent in his lifetime duly executed a will in writing whereby in substance he bequeathed to his said son, George Deaves, one hundred dollars, payable at majority, and devised and bequeathed all the residue of his estate to the petitioner, appointing William D. Jones as the executor of said will ; that said will was never revoked by the decedent, but became lost during his lifetime, and diligent search, both before and after his decease, failed to discover any trace of it ; praying that the petitioner be allowed to make probate of said will, and that letters testamentary be granted to the executor therein named.

### Statement of Facts.

A citation having been issued and service thereof accepted by the guardian of George Deaves, hearings were had before the register, at which testimony was taken showing, in substance, the following facts:

The testator executed a will some time in 1887, and afterwards placed it, with his other papers, in a bureau drawer to which no one but himself and his wife had access. His death occurred on October 19, 1889, caused almost instantly by a fall from a farm wagon which broke his neck. About six months before his death, when looking in the drawer for some other paper, he informed his wife that the will was missing. She then looked for it and could not find it. She told him to make another will, and he said that he would do so when he got a little time; when he got through with some of his work. At different times between that date and the date of his death, he said to other persons that he had lost his will and would have to get another made. Several witnesses testified to conversations with him, about three weeks before his death, respecting the loss of his will. To one witness he said that, the first chance he got, he proposed to go and have another will prepared, but would make a further search first, to see if he could find the lost one. To another witness he said that he must get his wife to look for the will again; and, a day or two afterward, he said to the same witness that he had not found it and must get another made at once. To a third witness he said he must attend to having another will drawn. For about three weeks immediately before his death, he was busily engaged in farm work.

On January 10, 1890, the register filed the following findings of fact and decree:

The first question to determine was, whether such will had been duly executed, and if so, was Lewis Deaves, at the time of its execution, of disposing testamentary capacity.

From the testimony of Frank Zeiss and George Zell, the two subscribing witnesses, it would appear to be clearly established that Lewis Deaves did, some two years prior to his decease, execute and publish a last will and testament, and that he was at the time of so doing of sound disposing mind, memory and understanding.

The second question to determine was, as to whether said

will was in existence at the time of the decease of Lewis Deaves, and if so, had a diligent and thorough search for the same, since the death of the decedent, failed to reveal its whereabouts.

All the te timony upon this point would seem to point to the conclusion that the document in question had, at the time of the decease of said testator, no practical existence, it appearing to have been lost within a short time after its execution, and diligent search, both before and after the decease of Lewis Deaves, failing to disclose its existence. The evidence also showed clearly that the will remained in the possession of Lewis Deaves, and that, notwithstanding the fact of its loss being known to him for a period of time long enough for him to make another will, and that it was his expressed intention to so act, in point of fact he never did replace the one alleged to have been lost, and, so far as his expressed belief was concerned, died without any will. Nor does the testimony in any manner go to prove that the decedent still desired the provisions of the alleged lost instrument to remain of force and virtue. On the contrary, the presumption points to a revocation of the will by the decedent, either by its destruction or, if actually lost, by neglecting, during a period of several months, to replace the document with a new one.

The third question to consider is, have the contents of the lost will been correctly proven.

The testimony upon this point is by no means conclusive. George Zell, the only disinterested witness who had read the will and was aware of its due execution, had read the document but once, and had made no special effort to impress upon his memory its contents; and, while he testified that, to the best of his recollection, the provisions of the will were in substance as set forth in the petition, yet he was not positive as to any one provision of said document. Mr. Kinsey, who had written the will, and who reproduced the same from recollection, had no knowledge that the instrument had ever been duly executed. Hannah B. Deaves, a highly interested witness, had read the will before it was signed, but had no positive knowledge that it had ever been duly executed.

And now January 10, 1890, after carefully reviewing the testimony as brought forth at a hearing of the above matter,

on December 16, 1889, and January 6, 1890, and after duly considering the same, the register finds as follows, viz.:

1. That, two years prior to the death of Lewis Deaves, he did duly execute an instrument in the nature of a last will and testament.

2. That, shortly after the execution thereof, said instrument was lost or destroyed.

3. That said will having remained in the possession of said Lewis Deaves, the presumption in law is that he revoked the same by destroying it.

4. That said Lewis Deaves died in the belief that he had no will in existence, and that he therefore to all intents and purposes died intestate.

In view of these findings, the register refuses to grant the prayer of the petitioner, and permission to make probate of the paper alleged to be a reproduction of the last will of Lewis Deaves, late of Haverford township, deceased, is hereby denied.

From the foregoing decree of the register the petitioner appealed to the Orphans' Court. After citation and answer, and argument upon the testimony submitted before the register, the court, CLAYTON, P. J., on June 2, 1890, filed the following opinion and decree:

To permit the probate of a lost will, the evidence ought to be fully satisfactory. It ought to clearly appear that the testator left behind him, at the time of his death, a last will in writing, legally executed and unrevoked by any act or direction of his: Foster's App., 87 Pa. 75. When such a case is sufficiently proved, the loss or accidental destruction of the will does not differ from other cases where the admission of secondary evidence of solemnly executed writings is admitted. The weight and credibility of the testimony, in such cases, is to be judged of by the register, who had the witnesses before him and could better appreciate their several statements than the court can by simply reading what they said. It may be that a will lost during the lifetime of the decedent, under some circumstances, could be reproduced; but if it should appear that the testator knew of the loss or destruction of the instrument, and had ample time to make another but did not do so, it would seem very

Opinion of Court below.

clear that the proof ought to be irrefragable. To doubt, in such a case, ought to leave the matter just where the testator left it.

The testator, in the present case, knew for nearly two years that he had no will. He knew that if he should die without making another will his estate would be distributed under the intestate laws of the state. If he saw proper to take the chance, we cannot question his right to do so. Suppose his house and all his papers, including his will, had been burned two years before his death, of which he had full knowledge. Would a court of equity permit him to prove the contents of the destroyed paper, for the purpose of perpetuating its contents? Such a proposition would be absurd. The answer of the chancellor would be, Make a new will yourself. If he should refuse to write a new will, the beneficiaries under the destroyed one could not be permitted, after his death, to come into court and reproduce his lost will; but, if the supposed fire had occurred so short a time before his death as to make it practically impossible or unreasonable for him to re-write his will, the court might permit its contents to be proved.

In the present case, the decedent knew that his will was lost for a long time, and had frequently said that he intended to make a new one, but he did not do it. The court will not now do for him what he either neglected or declined to do for himself. It would be to do what the decedent, perhaps, would not have done upon mature deliberation and would undoubtedly be an act of gross injustice to his heir-at-law.

We cannot express ourselves better than by adopting the language of the court in Foster's Appeal: "The declarations of a testator are of little weight, to establish the contents of a lost will, especially where, as is generally the case, the declarations are made to importuning or complaining relatives." There is, at least, a possibility and perhaps a probability that this will, as well as the preceding one, was destroyed by the testator himself as unjust to his son, and as an excuse to his wife he said what was undoubtedly true, that his will was lost.

The appeal is dismissed and the decree of the register affirmed.

—Thereupon the petitioner took this appeal specifying that the court erred :

1. In dismissing her appeal from the register's decision.

Arguments.

2. In sustaining the decision of the register.

*Mr. Lewis Lawrence Smith* (with him *Mr. A. Lewis Smith*), for the appellant:

1. The four prerequisites to the probate of a lost will are stated by the court below in Foster's App., 87 Pa. 67. The crucial part of the present case is in connection with the third, to wit, the necessity of showing that the will had not been revoked by the testator. The register decided adversely to the petitioner, on the ground that where a lost will is not traced out of the possession of the testator before his death, it is presumed to have been revoked by him. It is true that this presumption has been recognized by the courts, but its effect is merely to cast the burden of proof upon the proponents. It is a rebuttable presumption and gives way to evidence producing a conviction to the contrary, and showing that the testator continued to rely only upon the will as a disposition of his property: Davis v. Davis, 2 Add. [Addams?] 226; Minkler v. Minkler, 14 Vt. 125; Sugden v. St. Leonards, L. R. 1 P. & D. 154; Foster's App., 87 Pa. 67; Hildreth v. Schillinger, 2 Stockt. 196. Whether the will was actually in existence at the testator's death is unimportant, as affecting the question of revocation, for it may have been destroyed without his knowledge. The important question is, did he, believing the will to be irrevocably lost, revoke its provisions: Schultz v. Schultz, 35 N. Y. 653 (91 Am. Dec. 88).

2. Remembering that the presumption of revocation is merely a presumption that the decedent destroyed the will himself, it is clear that this presumption is absolutely rebutted in the present case, down to a period of two or three weeks before his death, by the proof that he was then looking for the lost will. The suggestion so dishonoring to his memory made by the court below, that he may have said, merely as an excuse to his wife, that the will was lost, is not founded on anything in the case. It is clear that he thought the will was lost, not destroyed, and was searching for it, under the belief that he would eventually find it, and intended, if he did not discover it, to make assurance doubly sure by executing another. There was no revocation, because there was no animus revocandi: Giles v. Warren, L. R. 2 P. & D. 403. The fact that he spoke of mak-

ing another will, which the register and the court below found so important, is not proof of the animus revocandi: Brunt v. Brunt, L. R. 3 P. & D. 37. It does not show that he intended to make a different will. The only reason given for that in· tention was the failure to find the old one, and the purpose evidently was to reproduce it.

3. The case narrows itself, then, to the rebuttal of the presumption of revocation during the two or three weeks preceding the testator's death. No testimony is produced to indicate any change in his mind: Sugden v. St. Leonards, supra. His death was a sudden one; and the three weeks in question were at a time of the year when a farmer has no time for anything except his farm. These and other facts rebut any presumption of an animus revocandi during that period. The register erred in regarding what he calls the practical non-existence of the will, and its revocation, as one and the same thing. The distinction between the loss of a will, in which case it may have a legal, although not a "practical" existence, and the testator may have abundant expectations of its recovery, on the one hand, and its destruction on the other, is clearly brought out in Schultz v. Schultz, 35 N. Y. 653 (91 Am. Dec. 88). It is questionable, however, under the facts of this case, whether a presumption of revocation ever arose: Foster's App., 87 Pa. 67. As to the proof of the contents of the will, the register does not fairly state the testimony. While some of the witnesses had some little doubt as to the amount of the legacy to the son, the doubtful ones thought it was $100, and the certain ones said it. But this is unimportant as affecting the gift to the appellant. It is not necessary to prove the whole of a lost will: Sugden v. St. Leonards, L. R. 1 P. & D. 154.

*Mr. E. H. Hall,* for the appellee, was not heard.

In the brief filed, counsel cited: 1 Jarman on Wills, 290; Jones v. Murphy, 8 W. & S. 275; Clingan v. Mitcheltree, 31 Pa. 25.

Opinion, Mr. Chief Justice Paxson:

This was an attempt to probate a will alleged to have been lost during the lifetime of the testator. There is no doubt that when it is shown that the will of a testator was in existence, unrevoked, at the time of his death, and was afterwards lost or de-

Opinion of the Court.

stroyed, its contents may be proved by parol, and the will, as thus reproduced, may be admitted to probate. So much was decided in Foster's App., 87 Pa. 67. The weak spot in the appellant's case is that there was no proof that the testator left behind him an unrevoked will, or any will whatever. On the contrary, it is an admitted fact that the will, which it was alleged the testator had executed, was lost or destroyed in his lifetime, and that its loss was known to him months before his death. There was proof of his declarations that he intended to make another will, possibly containing the same provisions, but he never did so. Knowing that he had no will, he declined or neglected to make one. From this a presumption of revocation may fairly be inferred. It would not be safe to place too much reliance upon the declarations of a testator under such circumstances. For anything we know, he may have destroyed his will because he was not satisfied with its provisions, and yet have desired to conceal the knowledge of that fact to avoid importunity.

Aside from this, the evidence was very slight to establish the will. The register finds: " The testimony upon this point was by no means conclusive. George Zell, the only disinterested witness who had read the will and was aware of its due execution, had read the document but once, and had made no special effort to impress upon his memory its contents; and, while he testified that, to the best of his recollection, the provisions of the will were in substance as set forth in the petition, yet he was not positive as to any one provision of said document." No question of the sufficiency of the proof arose in Foster's Appeal, supra. This appears from the opinion of Mr. Justice AGNEW, where he said: " That the contents of this will are clearly and fully proved, both by testimony and by written memoranda in the testator's own handwriting, is equally plain, and no question arises as to the number of witnesses, the contents being proved by two, as well as by the memoranda furnished by the testator himself." The proof should be very clear to probate a lost will, especially when it is attempted to be set up in part at least by the testimony of interested witnesses. We refer to this subject merely to avoid being misunderstood, as we decide the case upon the ground first above stated.

> The decree is affirmed, and the appeal dismissed at the costs of the appellant.