## Fallon's Estate.

*Will—Lost will—Probate—Revocation—Evidence—Presumption.*

Where a will was last seen in the possession of the testator, a presumption arises that it was destroyed by him, animo revocandi.

A lost will can only be established by the testimony of two witnesses.

The contents of a will cannot be established by one witness who is interested.

Argued Feb. 7, 1906.    Appeal, No. 12, Jan. T., 1906, by Amy L. Fallon, from decree of O. C. Del. Co., reversing decree of Register of Wills in Estate of Christopher Fallon, deceased. Before MITCHELL, C. J., FELL, BROWN, ELKIN and STEWART, JJ.    Affirmed.

From the record it appeared that Christopher Fallon died March 27, 1905, leaving a widow and four minor children. The widow claimed that the decedent had made a holographic will before the birth of any of the children giving all of his property to her and appointing her sole executrix and that he had made a new holographic will in exactly the same terms, after the birth of each child, the last one in September or October, 1895, and that this will continued unrevoked at his death, but could not be found.

The only one of the wills which was discovered was a holographic one dated February 11, 1887, made after the birth of the first child. The widow presented her petition to the register of wills for the probate of the lost will dated September or October, 1895, claiming the produced will of 1887 to be identical with it except as to the date. The register admitted a copy of the lost will to probate and on appeal by the guardian of the minor children to the orphans' court the decree of the register was reversed and the petition for probate dismissed.

In lieu of a second witness to the execution of the last will the proponent offered evidence of a long settled plan of testamentary disposition of the decedent to leave his entire estate to her, manifested by the execution of five different wills all to the same effect, one following the birth of each child ; the testimony of a witness who prepared a draft of a will in 1904 to the same

effect; and that testator was methodical and careful in the discharge of all details of his business affairs, and that the testimony disclosed that he had within a few months of his death moved his office, and less than two years prior to his death removed his residence, as indicating a reason why the will might have been mislaid.

Further facts appear in the opinion of the Supreme Court.

*Error assigned* was decree reversing decree of register of wills admitting the will to probate.

*Henry Pleasants*, for appellant.

*Frederic B. Calvert*, for appellee.

Per Curiam, March 19, 1906:

Impressed with the sincerity of the belief both of appellant and her counsel in the justice of her claim, we have examined this case with a disposition to view it favorably. But we are obliged to agree with the court below that the testimony does not come up to the legal requirements of a second witness, and that to hold the will established would make a dangerous departure from the precedents under the settled rule.

The will made in 1895 was last seen in the possession of the testator. The presumption, therefore, arises that it was destroyed by him, animo revocandi: Deaves's Estate, 140 Pa. 242; Stewart's Estate, 149 Pa. 111. The presumption is strengthened by rather unusual testimony to testator's methodical habits, tending to show the improbability of the will having been accidentally lost. In 1904, the year before his death, he expressed his desire to Calvert to make a will, and in 1905 to his wife in the presence of Miss Rocap he repeated his wish rather urgently. The only fact tending to rebut the presumption is his apparent acquiescence in the reminder by his wife that he had a will, made after the birth of his youngest child. But "after that" according to the testimony of Miss Rocap, "he tried to persuade Mrs. Fallon to sit down and write a will for him, and she persuaded not, and left the room. All Mr. Fallon said was that he would like to make a will; then he would say, 'No, I won't do it now, I will just save my

strength ; ' he had so much confidence of getting well that he tried to save his strength." The repeated recurrence by him to the subject, never expressed in the form of a desire to make a " new " will but always to make " a will " tends to show that he did not consider that he was leaving an operative will but thought one necessary. The conflicting inferences that may be drawn from the testimony on this point prevent the circumstances from supplying the place of the second witness which the established rule requires.

But even if the existence of a will at the time of testator's death should be conceded, the only proof of its contents is by one witness and she interested. The testimony as to the making and contents of previous wills, offered to show a settled plan of testamentary disposition, all comes from the same witness. The testimony of Calvert as to testator's instructions for a will in 1904 distinctly excludes reference to any prior will and is confined to a prospective will which he desired to make. While tending to render the supposed contents of the will of 1895 probable, it is not proof of anything more than an unexecuted intent. However clear such intent be it is not enough.

Decree affirmed.