McCaffrey Will.

Argued January 8, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*George S. Forde, Jr.,* with him *James E. Gallagher, Jr., Herman J. Obert, Stradley, Ronon, Stevens & Young,* and *Gibbons, Eustace & Obert,* for appellants.

*James R. Caiola,* for appellee.

*Harry N. Moran, Jr.,* for administratrix, appellee.

OPINION BY MR. JUSTICE ROBERTS, September 19, 1973:

James J. McCaffrey died on March 16, 1961, leaving two testamentary instruments—a holographic will dated in 1939, and a conformed copy of a 1947 will.[1] Both instruments were lodged with the register of wills but only the 1939 document was offered for probate. In

---

[1] Both wills bequeathed decedent's entire estate to similar charitable purposes.

1964, the register of wills determined that the 1947 will could not be probated and that the 1939 writing should be admitted to probate. Appellee—administratrix of the heir-at-law—appealed to the Orphans' Court of Philadelphia which vacated probate of the 1939 will. The court en banc dismissed exceptions and, on November 10, 1966, ordered that the record be remanded to the register of wills so that the 1947 will could be offered for probate. We quashed an appeal from that determination on November 28, 1967.

Thereafter, in accordance with the decree of the orphans' court, the register of wills considered the 1947 testamentary writing and admitted it to probate.[2] Appellee again appealed to the orphans' court which set aside probate of the 1947 will. The court en banc dismissed appellants' exceptions and this appeal followed. We now reverse.

Appellants contend that the orphans' court erroneously held that the 1947 will was revoked. In 1953, decedent's home was burglarized and the 1947 will was among the items stolen. Although decedent knew of the theft, he made no other will during the seven years prior to his death. The orphans' court concluded from this inaction that decedent revoked his 1947 testamentary instrument.[3]

---

[2] Appellee urges that since the register of wills held, in 1964, that the 1947 will could not be probated and since no appeal was taken from that determination, appellants are precluded from offering the 1947 will for probate by the Act of June 28, 1951, P. L. 638, art. II, §208, 20 P.S. §1840.208 (1964). That section provides that a party in interest who is aggrieved by a decree of the register of wills "may appeal therefrom within two years of the decree . . . ." In view of the fact that, on November 10, 1966, the orphans' court en banc ordered that "probate is opened" and directed that the 1947 will be offered for probate, we find appellee's contention meritless.

[3] The orphans' court relied on this Court's 1891 decision in *Deaves's Estate*, 140 Pa. 242, 21 Atl. 395 (1891). *Deaves's Estate*,

We hold that the 1947 will should be admitted to probate and distribution should be made to the charities in accordance with that last, valid testamentary instrument. The record fails to disclose that the 1947 will was revoked in a manner prescribed by Section 5 of the Wills Act, Act of April 24, 1947, P. L. 89, §5, 20 P.S. §180.5 (1950).[4] That section provides:

"No will or codicil in writing, or any part thereof, can be revoked or altered otherwise than:

"(1) Will or Codicil. By some other will or codicil in writing,

"(2) Other writing. By some other writing declaring the same, executed and proved in the manner required of wills, or

"(3) Act to the document. By being burnt, torn, canceled, obliterated, or destroyed, with the intent and for the purpose of revocation, by the testator himself or by another person in his presence and by his express direction. If such act is done by any persons other than the testator, the direction of the testator must be proved by the oaths or affirmations of two competent witnesses."

The express, specific, and literal language of Section 5 was legislatively designed to preclude revocation by any method other than that explicitly stated in the revocation section. The statutory language—and the decisions of this Court—with unquestioned clarity mandate that a will can be revoked *only* by one of the methods authorized by the statute. "Section 5 of the Wills Act

---

however, has been correctly interpreted to be merely a routine application of the doctrine that a testator in possession of a will prior to his death is presumed to have destroyed the missing document absent proof to the contrary. See *Murray Will*, 404 Pa. 120, 129 n.13, 171 A. 2d 171, 176 n.13 (1961); *Fallon's Estate*, 214 Pa. 584, 585, 63 Atl. 889 (1906); Annot., Proof of Nonrevocation in Proceedings to Establish Lost Will, 3 A.L.R. 2d 949, 967 (1949).

[4] Repealed and replaced without change by the Act of June 30, 1972, P. L. 508, No. 169, §2, 20 P.S. §2505 (1972).

of 1947 provides the manner in which a will may be revoked." *Leonard Estate*, 427 Pa. 363, 366, 234 A. 2d 856, 857-58 (1967). See also *Williams' Estate*, 336 Pa. 235, 9 A. 2d 377 (1939); *Seiter's Estate*, 265 Pa. 202, 108 Atl. 614 (1919); *Clingan v. Mitcheltree*, 31 Pa. 25 (1856); *Lewis v. Lewis*, 2 W. & S. 455 (1841); 5 Hunter, Pennsylvania Orphans' Court Commonplace Book, Revocation of Wills §§1 et seq. (1959).

As one commentator has noted: "To revoke a will or codicil, in whole or in part, it is necessary to do certain acts with a certain intent. The statute prescribes the available methods so far as the objective act is concerned. *Unless one of these methods is used, no revocation is accomplished*, regardless of how clear the intention to revoke may be. Thus in Williams' Estate, 336 Pa. 235 (1939), the testator wrote 'this will to be destroyed' at the top of one of the pages of his will, but probate was nevertheless ordered because none of the methods enumerated in the statute for revoking a will had been followed. The notation was unsigned so that it did not qualify as a revocation by another writing; and since the provisions of the will remained untouched by the added words they did not constitute a cancellation, obliteration or destruction." Bregy, Pennsylvania Intestate, Wills and Estate Act of 1947, Wills Act §5, ¶3 (1949) (footnote omitted) (emphasis added).

The record distinctly reveals that the original 1947 will was stolen when decedent's home was burglarized.[5] There is no evidence whatsoever that the 1947 will was "burnt, torn, cancelled, obliterated, or destroyed with the intent and for the purpose of revocation, by the testator himself or by another person in his presence and

---

[5] A copy of the 1947 will, retained by decedent's lawyer, was sent to decedent. It was this copy which was properly offered for probate. See *Murray Will*, 404 Pa. 120, 171 A. 2d 171 (1961) (probate of copy of will); *Baum Estate*, 418 Pa. 404, 211 A. 2d 521 (1965) (carbon copy).

by his express direction." Act of April 24, 1947, P. L. 89, §5, 20 P.S. §180.5(3) (1950).

Since the record fails to reveal that the decedent revoked his 1947 will in a manner designated by Section 5, which prescribes the sole and exclusive methods for revocation, we are unable to conclude—as did the majority in the orphans' court—that there was an effective revocation. Moreover, we are unwilling to subscribe to the notion that from the decedent's failure to make a new will, it can be presumed he intended to revoke the stolen will. Such inaction does not constitute a revocation within the meaning of Section 5. "[A] once perfect will must remain such, unless repealed, altered, or destroyed in one of the ways designated by the act . . . ." *Seiter's Estate,* supra at 206, 108 Atl. at 615.

It must be concluded that: "Under a statute such as the Statute of Frauds or the Statute of Victoria, which requires the testator's intention to revoke to be expressed by some act manifest on the will or by a subsequent will or codicil, it would seem impossible to revoke a will by a subsequent ratification of an act which was done without the testator's authority. When the act was done, it did not operate as a revocation; and to hold that the subsequent ratification makes such act amount to a revocation, is to ignore the provisions of such statutes and to revoke the will by the testator's subsequent oral declarations." 2 Page on Wills §21.32 (1960).[6]

The decree of the orphans' court is reversed and the record remanded for proceedings consistent with this opinion.

Each party to pay own costs.

---

[6] In view of our disposition, we need not reach appellants' alternative claim that, if the 1947 will is held to have been revoked, the 1939 will—which was expressly revoked by the 1947 will—is revived.

DISSENTING OPINION BY MR. CHIEF JUSTICE JONES:

In my view the majority has misapplied existing law and, therefore, I must dissent.

A review of the record discloses these additional facts. The attorney who drafted the 1947 will gave Mr. McCaffrey (decedent) the original will and kept a copy in his files. In December of 1953, decedent's home was burglarized and his safe, containing the will, was taken by a person or persons unknown and never recovered. Upon hearing of the burglary, the attorney visited and later wrote to decedent on January 5, 1954, enclosing a copy of the 1947 will. The attorney emphasized, in his letter, that this was only a copy and not a duplicate original of the 1947 will and he suggested that decedent make a new will immediately if he intended to dispose of all or any part of his estate by will. Since decedent's 1947 will contained charitable bequests, he further advised decedent that a new will containing charitable bequests would be invalid if executed sooner than thirty days before the death of the testator.[1] Thereafter, decedent consulted with the secretary to the Director of Catholic Charities some time before July 4, 1955, and spoke of the "robbery" and the loss of his important papers, and inquired as to the proper form of charitable bequests. The secretary later telephoned decedent to pursue the matter, and on July 6, 1955, sent him further advice and instructions as to how he might make his will should he decide to leave something to the Catholic Charities. Decedent, however, never made another will.

There is no doubt that when decedent executed his 1939 and 1947 wills he intended to make certain charities the beneficiaries of his estate. However, it is not clear what his intention was when he died. Even if he

---

[1] The attorney was obviously referring to the Act of April 24, 1947, P. L. 89, §7, 20 P.S. §180.7 (1964).

still intended that some or all of the charities should be the beneficiaries of his estate, the critical question remains: did he leave a valid will to accomplish this intention? Appellee argues that the copy of the 1947 will is not probatable and that the 1947 will, at the time of its execution, revoked the 1939 will. Although appellants would be satisfied if either will was admitted to probate, they prefer the 1947 will because it is a more refined expression of what they believe decedent intended at the time of his death. They argue, however, that if the copy of the 1947 will is not probatable, then it is also unavailable for the purpose of revoking the 1939 will.

A will, destroyed or suppressed by someone other than the decedent, may be established by proof that: (1) decedent duly and properly executed the original will; (2) that the contents of the executed will were substantially as appear on the copy of the will presented for probate; and (3) that when decedent died the will remained undestroyed or unrevoked by him. *Murray Will*, 404 Pa. 120, 129, 171 A. 2d 171, 175 (1961).

The execution of the 1947 will was proven by the testimony of the two subscribing witnesses, namely, decedent's attorney and his attorney's secretary. Both testified that the carbon copy of the will which was produced was an exact copy of the will executed by decedent. The attorney, however, further testified that he had a "vague" recollection of a chance meeting with the decedent, at which time the 1947 will was discussed, some time after the execution of the 1947 will but prior to its theft. The attorney "vaguely" recalled that decedent had said something to the effect that he was dissatisfied with certain provisions in the will. Although unable to state what they were or whether he was even told of any changes, the attorney testified that from the conversation he had the *impression* that decedent had written on the original himself. The attorney stat-

ed: "But these things are so vague in my mind I don't make them as positive statements." From this testimony the lower court concluded that changes were written upon the original 1947 will by decedent before the theft of the will and, therefore, the contents of the executed 1947 will were not substantially as appear on the copy of the will presented. The attorney's *vague recollections* of his *impressions,* however, were insufficient to show that the 1947 will had been later changed by the decedent.

The delicate question in this case is whether the 1947 will was revoked by decedent. Generally, where a decedent retains the custody and possession of his will and, after death, the will cannot be found, a presumption arises, in the absence of proof to the contrary, that the will was revoked or destroyed by decedent. *Bates's Estate,* 286 Pa. 583, 134 A. 513 (1926). To overcome that presumption the evidence must be positive, clear and satisfactory. *Dalbey's Estate,* 326 Pa. 285, 192 A. 129 (1937). Where decedent knows his will has been destroyed and neglects or declines to make a new one, a presumption of revocation may be inferred. *Deaves's Estate,* 140 Pa. 242, 21 A. 395 (1891).

In *Deaves's Estate,* testator discovered that his will was missing about six months before his death. At different times between when he discovered his will was lost and his death, he told other persons that he had lost his will and would have to make another one. Mr. Chief Justice PAXSON, speaking for this Court, stated: "The weak spot in the appellant's case is that there was no proof that the testator left behind him an unrevoked will, or any will whatever. On the contrary, it is an admitted fact that the will, which it was alleged the testator had executed, was lost or destroyed in his lifetime, and that its loss was known to him months before his death. There was proof of his declarations that he intended to make another will, possibly containing the

same provisions, but he never did so. Knowing that he had no will, he declined or neglected to make one. From this a presumption of revocation may fairly be inferred. . . ." 140 Pa. at 249, 21 A. at 395-96."[2]

The same presumption arises in the present case. Decedent's will was stolen in December of 1953 and he died in March of 1961. A short time after the theft decedent was advised by his attorney to make a new will promptly, to preserve any charitable bequests. Decedent then sought advice on the proper form of charitable bequests. He failed, however, to make a new will in the more than seven years between the theft and his death. A careful review of the record indicates, in support of this presumption, that decedent understood what had happened and the advice which he had received, and, accordingly, believed that he had no will. Moreover, there was no positive, clear and satisfactory evidence to rebut the presumption that the 1947 will was revoked by decedent. That the decedent kept the copy in his possession from shortly after the theft until his death does not, without more, rebut the presumption. The record discloses that the 1939 will and the copy of the 1947 will were found together among decedent's papers. These papers, some of which dated back to the turn of the century, included his ledger records, correspondence, cancelled bank books, tax returns and mortgage notices. Since he also saved his 1939 will which was specifically revoked in his 1947 will, we cannot conclude that by saving the copy of the 1947 will he intended it to be his will. The decedent obviously saved all his business papers and may have saved the copy of the 1947 will for future reference.

---

[2] Sections 13 and 14 of the Act of April 8, 1833, P. L. 128, were in effect when this case was decided. The provisions of these sections have been re-enacted substantially in Section 20 of the Wills Act of 1917 and Section 5 of the Wills Act of 1947, which is involved in the present case.

The majority errs when it states that the 1947 will was not revoked in a manner prescribed by Section 5 of the Wills Act. The "destruction" of the original 1947 will admittedly was not done at decedent's "express direction." or "in his presence." Section 5, however, is inapplicable. The purpose of the section is to prevent oral revocation of an existing, otherwise valid will. Here there is no such problem. Although the execution and existence of the original 1947 will have been proven, so has the fact that it has been physically destroyed.

We do not hold, and neither did this Court in *Deaves's Estate* hold, that actual revocation is effected by the destruction of the original will. Rather, from the overall circumstances in the case a presumption is created that the intent existed to ratify the loss which has already occurred. A presumption of revocation raised from the inability to find a will at a decedent's death is not based on objective proof that revocation occurred as required by the Wills Act—in such a case the presumption would not be needed. If, however, the presumption is not overcome, a revocation is effected without proof of compliance with the requirements of the Wills Act. Similarly, decedent's 1947 will is revoked without proof of compliance with the requirements of the Wills Act.

The existing 1939 will was also effectively revoked. For purposes of revocation the 1947 will, which contained a revocatory clause, took effect upon execution although its dispositive provisions necessarily remained ambulatory. *Ford's Estate,* 301 Pa. 183, 151 A. 789 (1930). The clause of revocation is effective even though the 1947 will cannot be given dispositive effect. Section 5 of the Wills Act does not require a revoking document to be effective as a will at the time of decedent's death. Section 5(2) provides that a will can be revoked "by some other writing declaring the same, exe-

cuted and proved in the manner required of wills." The requirement "executed and proved in the manner required of wills" refers back to Section 2—by "two or more competent witnesses." *Cf. Harrison's Estate,* 316 Pa. 15, 19, 173 A. 407, 409 (1934). A revoking writing may be an ineffective will, so long as it is proved as required. *Ford's Estate,* 301 Pa. 183, 151 A. 789 (1930). The testimony of decedent's attorney and the attorney's secretary was sufficient to establish proof of execution and contents of the original 1947 will. The 1939 will was effectively revoked even though the original 1947 will is unavailable. This is not a case where we would refuse to recognize an existing will because proof of revocation is limited to oral testimony of an unproduced written revocation. *E.g., Koehler's Estate,* 316 Pa. 321, 175 A. 424 (1934); *see, e.g., Harrison's Estate,* 316 Pa. 15, 173 A. 407 (1934). Here a conformed carbon copy of the 1947 will was properly proved. In *Ford's Estate,* 301 Pa. 183, 151 A. 789 (1930), a copy of decedent's 1926 will revoking his 1924 will, which had been in the custody of a trust company named as executor, was properly proved and admitted in evidence, along with the remains of his 1927 will which had been torn and crumbled at decedent's direction. These writings, together with the oral testimony, were held sufficient to show a revocation of the existing 1924 will. Under the instant circumstances, therefore, neither the carbon copy of the 1947 nor the existing 1939 will should be admitted to probate.

Mr. Justice EAGEN joins in this dissenting opinion.