## Bassett's Estate

*John M. Henry* and *William A. Griffith,* for petitioner.

*Howard D. Montgomery* and *Harry B. Wassell,* for respondent.

TRIMBLE, P. J., May 20, 1932.—Ira S. Bassett died on October 31, 1931. On November 6, 1931, letters of administration were granted to decedent's daughter, Geneive Bassett Mark, who qualified instead of his wife, who renounced. On November 9, 1931, a caveat was filed against the probate of any last will and testament of the decedent. On December 23, 1931, a petition was filed to probate a testamentary writing signed by the decedent on March 12, 1928. A hearing was had and the deputy register of wills, holding that the will had

been revoked by testator in his lifetime, refused probate. The proponents of the will filed a bond and appealed to the orphans' court.

The will executed by decedent was proved and offered in evidence. It had not been in the possession of decedent after it was signed. By its terms, annuities are given to his wife, his daughter and her children, but these are not payable until after Claude B. Sharp, Jr., the executor, pays himself any and all sums of money which may be due to him under the terms of a contract recited, identified by date only, and also pays to himself all sums of money that may be due under a power of attorney bearing the same date as the will. The residue of the estate passes to Claude B. Sharp, Jr., for such disposition as he, in the exercise of his best judgment, may determine, with full power and authority to dispose of the same by will or otherwise. The respondents, the widow and daughter, caused to be offered in evidence a writing which they and their counsel claim to be a revocation. It is as follows:

"To whom it may concern.

"Again on this the eleventh day of March I have been compelled yes forced to may a will & sign other paper—which I declare now that that shall not stand— Disregard them I was forced to make them wherein Mr. Claude B. Sharp Jr. is given right to be my executor & I don't know what else. They must not be treated as worth anything in case of my death no no never. I am in my right mind & now say they must not stand.

"IRA S. BASSETT
"March 14" 1928
"11:29 am."

The signature of Ira S. Bassett to said writing was proved by two credible witnesses. There was testimony offered for the purpose of discrediting the paper, but upon a careful consideration of all of it, it appears that the handwriting is that of Ira S. Bassett and that his signature thereto is genuine.

The writing was enclosed in an envelope which has written on the outside in the handwriting of Ira S. Bassett these words: "Ira S. Bassett, personal, To be opened only on my death." It was found in the drawer of decedent's bureau after his death. He had declared to his wife in the late summer of the year he died, 1931, that he had no will.

Three questions are raised by the proponents of the will who claim that the paper offered in evidence as a revocation of the will cannot be so dignified. First, it purports in the beginning to have been made on March 11th, whereas the will was actually executed on the 12th; second, that the writing is indefinite in that it does not specifically identify the will and does not formally declare a revocation; and, third, that, Bassett having declared that the will was signed under duress, it would, therefore, be invalid and not a subject of revocation.

Ira S. Bassett's declaration that he executed the writing to revoke his will on March 11th was a mistake. In fact, it was executed on the 12th. The revocatory writing was actually signed on March 14th, two days after the will was executed.

There is no doubt about the identification of the will in the revocatory writing. Claude B. Sharp, Jr., is executor of this will of March 12th, which was a revision of one of March 5th at the suggestion of testator and is the only will that any of the parties knew anything about.

Bassett declares that the will and another paper which he signed "shall not stand" and that they must be treated as worthless.

A will may be revoked by any kind of writing properly proved when it conforms to the Act of June 7, 1917, P. L. 403: Ford's Estate, 301 Pa. 183; Shetter's Estate, 303 Pa. 193. In the latter case, at page 197, the Supreme Court

244

said: "The statute, however, does not limit revocation to 'some other will' but opens the door to 'other writing,' and does not say this 'other writing' may not be an ineffective will, so long as it appears, as it does here, that the testator signed it."

A writing intended as a will is always ambulatory and is never operative until after death. The testator was an evangelist. All the law he needed he could find in the Epistle to the Hebrews, IX: 16, 17—stare decisis et non quieta movere. A will is not a contract. There is no obligation to keep it in existence. It is only a present declaration of intention which may be changed as the testator may desire. It, therefore, seems to be absurd to argue that a man, if compelled at the point of a pistol to sign a testamentary writing, could not revoke it by another writing when he found himself in a place of safety. The unlawful act which brings the testamentary writing into existence cannot be a warrant for its preservation until death. An immediate challenge to those who caused the duress and peril would be the best evidence of invalidity. Nevertheless, counsel advances the theory that the will must be probated because the only reason given for testator's attempt to revoke was that his signature was unlawfully obtained and that the proponents should have an opportunity to deny the declaration. It is conceded, however, that if the writing contained no reference to duress and was formally stated animo revocandi its validity could not be a matter of contest.

Wills which are informal are probated in great numbers and we see no reason why the same latitude should not be given in expressing an intent to revoke. There is no stricter legislative direction for one than for the other. The decisions all hold that any writing which discloses an intention to dispose of property at death must be probated as a will after death, and it would seem to be just as good common sense to say that any paper which destroys the validity of a writing which could be probated as a will should have the same construction. Seiter's Estate, 265 Pa. 202, cannot be used as authority for nullifying the effectiveness of a revocatory writing. In that case there was nothing to revoke.

The testamentary writing offered for probate was prepared by a lawyer, the revocation by the testator. The essential of one is that it was executed animo testandi, the other animo revocandi. When informality in expression appearing in the will does not obscure the intent of the writer, the validity of the disposition is not impaired. Neither should the revocation be under any stricter rule. In the lawyer's office, after careful preparation, testator had signed a testamentary writing indefinite in its effect upon his wife and daughter. He had placed his estate in the hands of an executor whose claims against him were undisclosed. He had provided for the payment of very large sums of money without tangible means to carry out the clearly expressed intent and, upon a reconsideration of his affairs and his family almost immediately after signing the will, his charge that he was forced to "may a will & sign other paper" may have been unjust to his family or to others but, whether to one or the other, the reason given for revoking is immaterial; "that shall not stand"—"they must not be treated as worth anything"—"they must not stand" reveal an animum revocandi as much as if he had said over his signature: "I now revoke my will dated the twelfth day of March in which Claude B. Sharp, Jr., is executor."

The prayer of the petition is that the letters of administration granted to Lillian Geneive Mark be revoked and canceled, that the decree of the register of wills refusing probate of the will be overruled and set aside, and that the will be admitted to probate. The petition will be dismissed by an appropriate decree when presented by counsel.

From William J. Aiken, Pittsburgh, Pa.