## Stewart's Estate.   Appeal of Clark, Executor.

*Will—Revocation of codicil—Presumption—Granting issue.*

Where a codicil has been destroyed, the law presumes, in the absence of proof to the contrary, that it was done by the testator himself.   Where the most that the evidence shows is that some one other than the testator might have destroyed the codicil, a verdict against the will could not be sustained, and an issue to determine whether or not the codicil has been canceled by the testator is properly refused.

Argued April 19, 1892.   Appeal, No. 170, Jan. T., 1892, by John Clark, executor of James S. Dean, deceased, from decree of O. C. Huntingdon Co., 1891, No. 227, refusing to grant an issue to determine whether or not the codicil to the will of David Stewart had been canceled by the testator.   Before PAXSON, C. J., GREEN, WILLIAMS, MITCHELL and HEYDRICK, JJ.

The facts appear by the opinion of the court below by FURST, P. J., refusing the issue, in part, as follows:

" On the 24th February, 1883, James Dean appealed from the decree of the register, refusing probate of a codicil to the will of David Stewart, and made application to the orphans' court for a feigned issue to determine whether or not a codicil thereto had been canceled by the testator.   This is the last of the case until presented to the court for an issue on the 20th of August, 1891, a period of eight and a half years thereafter.

"It is clear that a codicil had been made by the testator to his will. It was written about the year 1881 by Samuel Isett and duly witnessed by him and Thomas Cunning. By this codicil he devised a farm and a tract of timber land to his nephew, James S. Dean.

"The same property had been devised in the original will to David Cunning, son of Thomas Cunning, also a nephew of the testator.

"David Stewart died in February, 1883. After the funeral David Cunning asked Mr. Isett to read the will, and Cunning, who had the keys to the safe and the portfolio in which the will was contained, unlocked the safe and produced the papers.

"Upon examination of the contents of the portfolio by Mr. Isett and David Cunning, the will did not appear to be therein. Mr. Isett swears he examined the papers and could not find the will.

"David Cunning swears the next morning he proposed to the friends present to make another search, and the same papers were reopened and the will found in the sheet of paper with the codicil cut out. The codicil was written on the third page of the sheet of foolscap. A margin was left at the top and at the bottom of the sheet. On the strip at the bottom the names of the subscribing witnesses still appear.

"Mr. Cunning swears he found it that morning in the same paper which Mr. Isett held in his hand the day before, and which he did not open, saying it was too small to contain the will.

"Mr. Isett is not recalled to contradict this or explain his search in reference to this sheet of paper.

"Mr. Cunning swears that he never saw the will before and did not know of its contents.

"During the latter part of the life of David Stewart he intrusted all his business to the care of his nephew, David Cunning, and he had access to his safe for this purpose.

"Mr. Stewart gave him a key to the safe. The safe was in Mr. Stewart's room, which he occupied up to his death.

"Mr. Stewart stated to several persons, after the date when the codicil is known to have been written, that David Cunning would get all of his property. Mr. Stewart was unmarried and his nearest relatives were nephews or nieces, and perhaps a sister.

" Before the will was written Mr. Stewart had difficulties with James S. Dean, or his father, or both.   He had taken great dislike to the Dean family, and the substance of his conversation at that time was that they would not be benefited by his death.

" After this an attempt had been made at reconciliation by the Rev. N. G. White about 1879, which no doubt resulted in a codicil to the will in favor of James S. Dean.

" James S. Dean seems about this time to have written his uncle, stating his distressed pecuniary condition.   The letter was so written as to suggest to his uncle the propriety of his advancing him some money.   It is said that this again embittered Mr. Stewart against Dean and influenced him to cancel the codicil.

" Mr. Stewart was a man of strong prejudices.

" All the testimony relating to this contest seems to have been taken and submitted to the court on this application.

" The law never presumes fraud in the first instance.

" Where a will is canceled in whole or in part, and there are no suspicious circumstances surrounding the case, the presumption is that it was done by the testator.

" Does the evidence in this case change this presumption ?

" If it were shown that David Cunning had the possession of the will, either before or after the death of David Stewart, and it was found in the condition it was, we would hold that the presumption was overthrown, and that he would be required to exculpate himself from the suspicion that he had mutilated the will, or caused it to be done, and the reason would be very strong in this case, as the destruction of the codicil would be to his advantage.

" It is, however, not shown that he, or anyone in his behalf, had possession of the will.

" The most that the evidence does show is that he had the power, authority and right, by the express direction of the testator, to go to his safe to transact business.

*       *       *       *       *       *       *       *

" While David Cunning had access to the safe, it is not shown that he ever saw the will or heard of its contents.   In fact, he swears that he had not, and there is no testimony impeaching his credibility or contradicting him."

*Martin Bell, John D. Blair* with him, for appellant.

*George Orlady* and *Aug. S. Landis,* for appellee.

PER CURIAM, May 2, 1892:

We do not think it was error to refuse the issue prayed for. It is true, the circumstances connected with the destruction of the codicil are of a peculiar nature, and somewhat suspicious. The law presumes, however, in the absence of proof to the contrary, that it was done by the testator himself. There is nothing beyond mere suspicion pointing to anyone else. The most that the evidence shows is, that some one other than the testator might have destroyed the codicil. This, however, would not be sufficient to sustain a verdict against the will, and the issue was properly refused.

The decree is affirmed, and the appeal dismissed at the costs of the appellant.