# Weber's Estate.

*Wills—Probate—Lost will—Torn will—Presumption of revocation—Burden of proof—Evidence—Secondary evidence.*

1. The proponent of a will alleged to have been lost, or destroyed, must in any event account for the nonproduction of the will, in order to lay the foundation for secondary evidence of its contents.

2. On a rule for an issue devisavit vel non, the testimony of one witness offered by proponent to the effect that testator had declared to him that in cleaning out some papers he had accidentally torn a will previously executed, and that it would have to be rewritten, is insufficient to explain its nonproduction so as to serve as a foundation for secondary evidence of its contents.

3. In such case, where it appears that the will had remained in the exclusive custody of testator from the time it was made until the time when he told the witness that he had torn it, and there is no testimony that it had ever passed out of the control of testator to another, the declaration of testator cannot be construed into an admission that he had himself destroyed the will and made its production impossible, when all he asserted was that he had torn it. The presumption arises from continued possession and nonproduction after his death that testator had himself destroyed it animo revocandi, and the burden of overcoming this presumption rests on the proponent.

Argued March 1, 1920.  Appeal, No. 195, Jan. T., 1920, by Charles O. Filbert, from decree of O. C. Berks Co., File No. 2392, Term 1919, dismissing rule for issue devisavit vel non in Estate of Albert S. Weber, deceased. Before BROWN, C. J., STEWART, MOSCHZISKER, FRAZER, WALLING, SIMPSON and KEPHART, JJ.  Affirmed.

Rule for issue devisavit vel non.  Before SCHAEFFER, P. J.

The opinion of the Supreme Court states the facts.

The court discharged the rule.  Charles O. Filbert appealed.

*Error assigned* was decree dismissing rule for issue.

*William Kerper Stevens,* with him *George Eves,* for appellant.—It is error to refuse an issue devisavit vel non where disputed material facts appear in the testimony: Evans' App., 58 Pa. 238; Glockner v. Glockner, 263 Pa. 393; Dan v. Brown, 4 Cowan 483, 15 Am. Dec. 395, 398.

*E. H. Deysher, William Jackson Young* and *H. Seidel Throm,* for appellees, were not heard, but cited in their paper-book, Fallon's Est., 214 Pa. 584.

OPINION BY MR. JUSTICE STEWART, June 26, 1920:

Albert S. Weber, late a resident of the City of Reading, died 3d of February, 1919, unmarried and leaving to survive him as his next of kin five brothers and two sisters.  No will having been produced after his death, letters of administration on his estate were granted by the register to Rudolph S. Weber, the eldest brother of the deceased.  In a few weeks thereafter Charles O. Filbert filed his petition with the register of wills in which he alleged that decedent had died testate, but that shortly before his death he had inadvertently or accidentally torn the will he had executed without any intention of

revoking the same, and that he, Charles O. Filbert, the petitioner, was a beneficiary named therein, submitting with his petition what he alleged to be an exact copy of the original will found and discovered since his death, and praying that the letters of administration granted to Rudolph S. Weber be revoked, and that the alleged exact copy of the will submitted by himself be admitted to probate. To this an answer was filed by the administrator and the brothers and sisters of decedent, in which they severally disclaimed all knowledge of the execution of any last will by the decedent, and asked that the petitioner be required to make proof of his allegations. Thereupon the register proceeded to hear the testimony produced by the proponent in support of his averments. Later on we shall make fuller reference to this testimony. It is only necessary here to state that, after the hearing and upon full consideration of the case, the register declined to set aside the letters of administration he had granted, and refused probate to the paper submitted as the last will of decedent. An appeal followed to the orphans' court with the request that the entire record be certified and that a rule be granted to show cause why an issue devisavit vel non should not be directed to the court of common pleas under the Act of June 7, 1917, P. L. 415. The matter was so proceeded with in the orphans' court that, on 9th February, 1920, the order for an issue was refused and the decree of the register was affirmed. The matter is now brought to this court on an appeal by the proponent, Charles O. Filbert.

The assignments of error raise several questions which relate to, but are subordinate to, what we regard as the main and controlling question, and therefore do not call for separate consideration here. If we assume that the evidence adduced before the register is sufficient to establish the fact that decedent on the 20th of June, 1916, executed a last will duly attested, which he retained in his possession until a day in December, 1917, and that, at the date last mentioned, when engaged in

cleaning out some of his papers in his safe, he accidentally tore the will, yet, in view of what the register was asked to do, a necessary step in the investigation would have been to offer some explanation of why the torn will was not produced. As to this the record is wholly silent.

The next step in the order of proof would have been to lay sufficient ground to make admissible the secondary evidence by which it was proposed to show the contents of the missing will, by showing that the original was irrecoverable because lost or destroyed. It seemed to be assumed in every stage of the case that the missing will was a *destroyed* will—that it was destroyed by the testator himself on the occasion and in the manner referred to by the testator in his conversation with the witness Goldman. Unless what testator said to Goldman can be fairly taken as an acknowledgment by the testator that he had accidentally *destroyed* the will, disappearance of the will stands wholly unexplained, and the legal presumption would remain, until overcome by evidence, that testator at some time or other, subsequent to the incident related, had done something to the will animo revocandi, which prevented its recovery.

It is important in this connection to have in mind just what Goldman said. He had already testified that being on close and confidential terms with the testator, himself a photographer and the decedent a cigar dealer, the latter asked him to prepare a will for him; that having been given the data he prepared such will expressive of testator's desires which he submitted to the testator, and upon its approval by him he wrote it out more formally but in exactly the same language throughout and gave it to the testator with a view to its execution; this was in June, 1915; that, some days after, testator told him he had executed the will the witness had written and gave him the names of the two subscribing witnesses. He further testified that on several subsequent occasions, up to the summer of 1918, the testator referred

to the will as having been executed. He was then asked: "Q. What happened later, and state the date?" He answered, "About the first week of December last year [1918] he, the testator, told me that he had accidentally torn the will and we would have to rewrite it." The next question was, "Q. Please state when this was, and the exact language. A. I came to his place of business and he was alone. He said, 'I done a hell of a thing last night. I cleaned out some of my papers in my safe and I accidentally tore the will.' He says, 'Now we will have to rewrite it.' About that time a customer came in the store and he went to wait on him, and they got into a conversation and the subject was not broached any more that night. Q. What was the next conversation you had with him in reference to the reproduction of the will? A. A few days afterwards at his place of business. Again in the evening, a few nights afterwards, I called his attention to the fact that no time had been fixed for the rewriting of that will. He told me that as soon as both our businesses slacked up—it was a busy season and there was no particular hurry about it—we will let it go until after Christmas." The testator died the 3d of February following, and nothing further was said or done about rewriting the will. In the above recited testimony will be found every word of evidence touching, even remotely, the nonproduction of the original will. Not a witness aside from Goldman makes the slightest reference to the disappearance of the instrument, and Goldman's reference is wholly unimportant except as it introduces the statement made by the testator that he had torn the will. One purpose in introducing the testimony of this witness must have been to account for the nonproduction of the will on the theory that it had been destroyed, and thus open the way for an introduction of secondary evidence to establish its contents. Can it be reasonably inferred from the single statement by the testator made to his scrivener "that he had accidentally torn the will and that they would have to rewrite it,"

that he had so torn the instrument that it was no longer legible? The will was the will of the testator, and no matter what impairment the instrument had undergone it remained the will of the testator so long as the instrument was legible, whether torn in two or many parts. Were it simply a question of whether the expression "I tore the will"—without any evidence as to the extent or character of the tearing, whether much or little, or in what part it had been torn,—could be construed as an expression by the testator of a present intent that it should not operate as a will, no one can doubt that such construction could not be given it since that would imply a revocation regardless of the extent of the impairment of the instrument, and derivable solely from its appearance without the aid of extrinsic evidence. With no more reason could such construction be given it when the question was merely one where the intention is eliminated and the question goes only to the destruction of the instrument. It is of no consequence what the testator thought as to the legal effect of his having torn the instrument. If in a certain sense tearing a will may be the equivalent of destroying it, nevertheless, if the will continues—notwithstanding even in parts—undestroyed, it remains the will of the testator, and secondary evidence could not be received as to its contents until the failure to produce the original has been fully and satisfactorily explained. No search was ever made for this will; it seems to have been assumed by the administrator that Weber had died intestate because the proponent, Filbert—who lived with the testator up to his death, had access to the latter's safe and had read the will—told him there was no will. It is a settled rule that the proponent of the will alleged to have been lost or destroyed must in any event account for the nonproduction of the will in order to lay the foundation for secondary evidence of its contents: Strong v. Potts, 94 Neb. 742, a case reported and annotated in 50 L. R. A., N. S., 861, in which report may

be found a collocation of authorities which show how generally this rule obtains. Upon a careful examination of the evidence we are clearly of opinion that it does not explain the nonproduction of the will, and that for this reason the court committed no error in refusing an issue devisavit vel non.

But the correctness of this disposition of the case does not rest alone upon the circumstances we have discussed. An additional fact disclosed by the evidence, of much importance, is that the will had remained in the exclusive custody of the testator from the time it was made certainly to the time when he told Goldman, the witness, that he had accidentally torn it, and there is not the slightest evidence that it had ever passed out of his custody into that of another. Giving to the declaration of the testator to Goldman its true significance and the meaning which its words naturally import, it is impossible to construe it into an admission that testator had himself *destroyed* the will and made its production impossible, when all he asserted was that he had torn it. With the fact appearing that the will had been in the custody and control of testator up to the time of his death,—and there is nothing in the evidence that suggests anything to the contrary,—and upon his death it could not be found, the accidental destruction goes out of the case and the presumption at once arises that the testator had himself destroyed it animo revocandi, and the burden of overcoming this presumption rested upon the proponent: Foster's App., 87 Pa. 67. We are strongly of opinion that this is the more reasonable way of interpreting the facts disclosed by the evidence. The testator lived some two months succeeding the conversation testified to by Goldman; his extreme illness when he was unable to make physical exertion lasted only several days; during the remainder of this period, with the will in his custody, he very readily could have destroyed it. What is there in the evidence to raise an inference that he did not do so? We find nothing; whereas, if the copy

which proponent introduced in evidence is taken to be a true copy, very much may be found there that would supply sufficient reason for his concealing his destruction of the will, if he had so destroyed it, situated as he then was, a member of the family which comprised the chief beneficiaries under the will. We feel it is only right and proper to give effect to this presumption after a careful review of all the facts in the case, and for this reason we are of opinion that the conclusion reached by the orphans' court must be sustained.

The assignments of error are overruled and the decree is affirmed. Costs to be paid by the appellant.