## Dengler Estate

194

Before Klein, P. J., Bolger, Lefever, Saylor and Shoyer, JJ.

*Henry P. Carr*, for exceptants.

*Ralph Schwartz*, for proponents.

LEFEVER, J., March 28, 1958.—This is an appeal from the action of the register in probating and granting letters upon an alleged will, dated May 18, 1955. The learned hearing judge heard the testimony of the subscribing witnesses, the testimony of the contestants' witnesses and only a portion of the evidence offered by the proponents. At the conclusion of the testimony of one of the proponents' witnesses, who was also a subscribing witness, the hearing judge interrupted the hearing and ordered a jury trial on the issues of undue influence, and the mental and physical capacity of testatrix to make the disputed will. Proponents filed exceptions to this order. The case is before us on those exceptions.

This case raises for the first time the question of the right and power, invested by the recent amendments to the Orphans' Court Act of August 10, 1951, P. L. 1163, in the hearing judge, to order a jury trial prior to the completion of the hearing of a will contest, and the further question as to whether such an order is reviewable by the court en banc prior to the jury trial.

The orphans' court judge assigned to hear a will contest now has authority to summon a jury at any

stage of the proceedings. This authority stems from the Act of February 10, 1956, P. L. 1022, which amends the Orphans' Court Act of 1951. The amended sections, with the comments of the Joint State Government Commission [1] are as follows:

"Section 744. *Testimony in Proceedings Removed from Register.*—On appeal from the register, or in a proceeding removed from the register, the court may find, upon the testimony taken before the register, that a substantial dispute of facts exists and grant a jury trial. When upon the testimony taken before the register a jury trial is not granted, the court shall hear the testimony de novo unless all parties appearing in the proceeding agree that the case be heard on the testimony taken before the register. In any event, the court may require witnesses already examined and other witnesses to appear before it. *The court, in its discretion, may impanel a jury at any stage of the proceedings.*

"Comment—1956 Amendment—The addition of the last sentence to this section, together with Section 746 (a. 1), is intended to make it possible for the orphans'

---

[1] The comments of the Joint State Government Commission are relevant and germane to the construction of the statutes drafted by that commission: Martin Estate, 365 Pa. 280. See also Verner Estate, 358 Pa. 280, 293. In both of these cases the Supreme Court relied upon the comments of the Joint State Government Commission in interpreting the Wills Act of 1947 and the Intestate Act of 1947, drafted by that commission. In Martin Estate, supra, the court stated at page 283:

"That this is the correct construction is further evident from an examination of the former law and of the comments of the Commission which drafted the aforesaid Acts. . . . Moreover, in ascertaining the legislative meaning, while what is said in debate is not relevant, the report of a legislative commission or a Senate or House committee may, if obscurity or ambiguity exists, be considered: *National Transit Company v. Boardman,* 328 Pa. 450, 197 A. 239; *Tarlo's Estate,* 315 Pa. 321, 172 A. 139."

court *to award a jury trial or impanel a jury at any stage of the proceedings before or after any or all of the testimony is heard,* thus avoiding any duplication of hearings.

"Section 746. *Trials in the Orphans' Court.*— (a) Jury . . .

"(a.1). In any case begun before or certified or appealed to the orphans' court, the court may, on its own motion or on motion of a party and with reasonable notice to all parties, (1) *combine the hearing to determine whether a substantial dispute of fact exists with the trial to determine the dispute, and impanel a jury before determining whether or not a substantial dispute of fact exists,* and (2) combine the hearing and trial on all wills, the issues in regard to which are closely interrelated. The court may withdraw the case from the jury, if the court determines no substantial dispute of fact exists.

"Comment—1956—Act—The addition of this subsection makes it possible for the court to determine whether or not a substantial issue of fact exists and to dispose of the case on its merits in one proceeding, thus avoiding the burden of two trials when one will suffice." (Italics supplied.)

The language and intention of the statute, as amended, is clear. It empowers the hearing judge, in his discretion, to impanel a jury (1) upon the record before the register; (2) upon the allegations in the pleadings; (3) upon the facts revealed at a pretrial conference; or (4) at any point during the hearing, when the evidence warrants. In short, the hearing judge is empowered (1) to begin the hearing with a jury, or (2) to interrupt the hearing at any point, summon a jury and proceed de novo before the jury.

Administrative problems may arise in connection with the hearing judge's exercise of this discretion.

Juries are not always available on dates fixed by the orphans' court for will contests. Other court engagements may preclude the hearing judge, who has devoted hours or days to the hearing of a will contest, from proceeding immediately with the jury trial. Moreover, either he or the court may deem it advisable to assign the jury trial to another judge of the court. Therefore, it may be necessary or advisable to schedule the jury trial for a later date. However, this does not curtail the absolute power and discretion, invested by the act in the hearing judge, to order a jury trial.

There is no doubt that an order by the hearing judge, refusing to award a jury trial and dismissing the appeal, is a final order which is subject to review by the court en banc and thereafter by the appellate courts. The reason for this is apparent. The order of the hearing judge, unless reversed, terminates the litigation.

In contrast, the order of the hearing judge awarding a jury trial does not decide or conclude the issue. Therefore, it is interlocutory. Accordingly, such an order is not subject to appeal to the appellate courts: Schwilke's Appeal, 100 Pa. 628; Judge Hunter's Pennsylvania Orphans' Court Commonplace Book, volume I, page 206. See also Shepard's Estate, 170 Pa. 323, 326. In Schwilke's Appeal, supra, the court said, at page 631:

"If the court refuse to award the issue, it is such a definitive decree that an appeal therefrom lies to this court. In that case we consider the whole evidence on which the court below decided, and determine as to the correctness of its conclusion.

"Directing the issue is not a definitive decree from which an appeal lies to this court. It is preliminary only. It is merely one step toward obtaining the verdict of a jury. . . ."

It logically follows that the award of an issue by a hearing judge is not reviewable by the court en banc.

There is little law on this subject. On occasion, possibly as a matter of grace, exceptions to the award of an issue have been heard.[2] However, the amended act, empowering the hearing judge to impanel a jury at any point in the proceedings, eliminates any possible doubt that such an order is interlocutory and not subject to review by the court en banc. Were this not so, the discretion would be vested in the court en banc rather than in the hearing judge. Moreover, to grant immediate review would defeat the legislative intent of the amendments, namely, to eliminate, or, at least, to reduce duplication of trials in will contests.

It was argued that our local rule 77.1 (a)[3] impliedly authorizes the filing of the present exceptions to the order of the learned hearing judge in this case. Where there is a conflict between our rules and a later statute, the latter governs.[4] Accordingly, we hereby rule that there is no right under our local rules to file exceptions to the award of a jury trial in a will contest.

We decide, therefore, that the order of the learned hearing judge in awarding a jury trial in the instant case is not now reviewable by the court en banc. Accordingly, the present exceptions are premature and must be dismissed. Under the amended statute, it

---

[2] See Estate of Sarah Casey, deceased, Phila., O. C., no. 131, January term, 1926, where exceptions to an order awarding an issue to be tried in the common pleas court were heard by this court en banc and the case was referred back to the hearing judge for further testimony. See also the dictum in Bhare Estate, 88 D. & C. 191, 201.

[3] "Orders and decrees of a Hearing Judge entered upon appeals or upon certifications from the Register shall become absolute as of course, unless written exceptions thereto are filed with the clerk within fifteen days from the entry thereof."

[4] Recent amendments to the statutes, involving both substantive and procedural law in this court, require a number of changes in our rules. We are in the process of making the requisite revisions therein and they will be promulgated in due course.

would seem unnecessary for the hearing judge in awarding an issue to write an opinion. The action of the learned hearing judge in doing so in the instant case is harmless surplusage.

In view of our decision that the exceptions are premature, no need exists for us to consider exceptants' argument that a substantial issue has not been presented. However, we have nonetheless carefully reviewed the entire record in this case. We unanimously agree with the learned hearing judge that a jury trial is required.

The undisputed facts are that testatrix died on June 22, 1956; that testatrix suffered from hypertension and arteriosclerosis for many years prior to her death; that she suffered a stroke on February 6, 1954, described by her physician as "a cerebral vascular accident", and by the consultant internist as "a cerebral thrombosis", as a result of which her vocal cords were partially paralyzed, and her speech was affected "due to lesion in the cortical area, the cortex of the brain"; that "she has a poor memory"; that her only child, Carmen Frank Dengler, married Martha in 1937 and divorced her in 1945; that his sole issue and decedent's only grandchildren and closest of kin were the fruit of that marriage, namely, Carmen Frank Dengler, Jr., born in 1938, presently a college student, and Judson J. Dengler, born in 1943, presently a high school student; that during his lifetime Carmen took care of decedent's business affairs; that substantially all of the property which constitutes decedent's estate was at Carmen's death held by decedent and Carmen as joint tenants with right of survivorship; that Carmen had aided in the support of his two sons although they lived with Martha and her second husband, who presently receives "take home pay" of around $90 a week; that Carmen died April 23, 1955; that two days later, on April 25, 1955, before Carmen's body was buried,

Albert C. Richter, Esq., drew a will in longhand, which gave a life estate with power of consumption to testatrix' 95-year old mother, who died April 21, 1957, and the remainder equally to Richter's wife, Gertrude, and Louisa Horner and Harold F. Schneider (sisters and brother of testatrix); that testatrix executed this will in the presence of subscribing witnesses, Richter and Henrietta Abrams, a practical nurse in attendance upon decedent for six weeks; that on May 18, 1955, decedent executed a typewritten will, prepared by Richter which was identical with the handwritten will, and was witnessed by Richter and Mildred Rollin, who was a domestic employed in decedent's household; that on neither occasion was the will read or explained to testatrix in the presence of the subscribing witnesses; that testatrix did not utter a word during the execution of either will; and that in his conference with testatrix respecting the preparation of the will Richter never mentioned decedent's grandchildren nor inquired about a gift to them.

Proponents' witnesses, including an osteopathic physician, who regularly attended decedent, the scrivener and others, testified that at or about the dates of the execution of the two wills decedent was able to and did walk about her home; that she was able to communicate with members of the household; that she was clear in her mind, mentally sound, competent to make a will and knew what she was doing when she executed the disputed wills.

In contrast, contestants' witnesses, including a registered nurse who had known decedent since childhood, the practical nurse who was the subscribing witness to the first of the disputed wills, one of decedent's grandchildren, Martha, Martha's second husband and others, testified that in the spring of 1955 decedent was practically helpless physically; that she could rarely utter more than a single word at a time; that

the longest sentence she ever uttered was, "I slept fine"; that she conveyed ideas by drawing a simple picture like a shrimp when she wished to be served shrimp for a meal, or answered "yes" or "no" vocally, or indicated her answer by a nod or shake of the head, to a series of questions; that "she did not have the power of articulation. There was a mumbling in her throat but there were no words that you could understand . . . She couldn't talk. There was mostly just little mumblings. There was no understanding . . ."; and that a large chart had been prepared for her on which were written 36 words or phrases, such as "water", "turn the radio on", "orange juice", "clean my glasses", "Kleenex" and others, dealing with daily needs, and that testatrix communicated her request by pointing to the applicable phrase when the chart was placed before her.

To say the least, there is a question whether testatrix in her weakened physical and mental condition had capacity to make a will. However, the crucial question is: Did she have power to, and did she, communicate to the scrivener her intentions with regard to her testamentary dispositions, so that the documents which she signed constituted her will? A jury is the proper tribunal to try these issues.

We cannot refrain from commenting adversely upon the conduct of the scrivener of this will. The canons of legal ethics, the high standards of the legal profession and professional propriety should move a lawyer who is to receive one-third of the remainder of an estate directly, or through his wife, not to draw the will unless compelled to do so by unusual and pressing circumstances. Far better for him to arrange for disinterested counsel to interview the testatrix and draw her will. Failing that, the interested scrivener should be absolutely certain that testatrix has the knowledge and memory with regard to the classic requisites for

making a will, viz., the extent of her assets, the identity of her relatives and those relatives who are the natural objects of her benefactions.[5] This is particularly important where the testatrix is mentally or physically incapacitated. The failure of the scrivener in the instant case to mention to testatrix her closest relatives, her grandchildren, who have just been orphaned by the death of her son, with resulting termination of his regular contributions to their support and education, was palpable lack of judgment, if not censurable misconduct.

Section 746 (a.1) (2) authorizes the hearing judge to place before a jury the validity of a series of wills.[6] In the instant case there are two identical alleged wills, executed respectively on April 25, 1955, and May 18, 1955. With the express approval of the hearing judge, his order is amended to provide that the validity of both wills shall be presented to the jury for determination.

Accordingly, all the exceptions are dismissed, the order of the learned hearing judge, directing a jury trial before a judge of this court, is amended to include the alleged will of April 25, 1955, as well as the alleged will of May 18, 1955, and, as so amended, the order is confirmed.

---

[5] These requisites were recently restated by the Supreme Court, speaking through Mr. Justice Benjamin R. Jones, in Kerr v. O'Donovan, 389 Pa. 614, 633: "It has long been established that a decedent possesses testamentary capacity if he or she has knowledge of those that are the natural objects of his or her bounty, of generally what his or her estate consists, and generally what he or she wants done with it, even though his or her memory may be impaired by age or disease."

[6] The consolidation of several issues where the wills were "closely interrelated" was approved prior to the act: Simon Will. 381 Pa. 284, 290.