**Murray Will.**

Argued April 28, 1961. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Robert Ruppin,* for appellant.

*John Milton Ranck,* with him *Herbert S. Levy, W. Roger Simpson,* and *Appel, Ranck, Levy & Appel,* for appellees.

122

OPINION BY MR. JUSTICE BENJAMIN R. JONES, June 2, 1961:

This appeal attacks the propriety of the action of the Orphans' Court of Lancaster County in directing a trial by jury of certain issues of fact involved in an appeal to that court from the probate by the register of wills of an unsigned copy of the last will of Beatrice J. Murray, allegedly destroyed or suppressed by someone other than decedent.

Beatrice J. Murray, a resident of Lancaster County, died May 9, 1957, survived by three sisters, Kathleen Helm, Mary Murray, and Ella Grady, and one brother, Patrick Murray.[1] Letters of administration were granted by the register of wills to Kathleen Helm.[2]

Approximately six months later, the Lancaster County National Bank of Lancaster [the Bank] petitioned the register for the probate of an unsigned copy of a will which decedent allegedly executed on June 29, 1956 and which was thereafter destroyed or suppressed by a person other than decedent, for the issuance of letters testamentary to it as executor under that will and for the revocation of the letters of administration issued to Mrs. Helm. After taking testimony, the register found that decedent had executed her last will on June 29, 1956, that the unsigned copy bore substantial identity to the original will, that that will remained unrevoked at the time of her death and that the original of that will had been suppressed or destroyed by a person other than decedent. In accord with his findings, the register revoked the letters of

[1] Kathleen Helm resides in New York City, Mary Murray resides in East Orange, N. J., Patrick Murray resides in Lancashire, England, and Ella Grady resides in Galloway County, Ireland.

[2] In her petition for letters of administration, Mrs. Helm stated that she and Ella Grady were decedent's only heirs and that Mary Murray and Patrick Murray had "predeceased" decedent. This statement was patently erroneous.

administration previously granted to Mrs. Helm, admitted the copy of the will of June 29, 1956 to probate and granted letters testamentary to the Bank.

This will provided, inter alia: (1) all debts and funeral expenses were to be paid; (2) a $1,000 bequest to decedent's church; (3) a $4,000 bequest in trust for Anna E. Doerr, a friend, the income to be paid to her for life and, on her death, the principal to become part of the residuary estate; (4) a division of the residuary estate into four "shares"; one "share" payable to Ella Grady (sister), one "share" payable to Patrick Murray (brother), one "share" payable to Eileen B. Grady (niece) and one "share" payable to Kathleen F. Grady (niece); in the event any of the named residuary legatees failed to survive decedent, the "share" of the person so dying was to be equally divided among the other named residuary legatees living in Ireland who survived decedent.[3] Under that will, the Bank was named executor and T. H. Wentz, Esq.,—scrivener of the will—designated as estate counsel.

Approximately four months after the register's decree, Kathleen Helm and Mary Murray appealed to the orphans' court and a citation was issued to show cause why their appeals should not be sustained. At a hearing held before President Judge JOHN L. BOWMAN, the proponent of the will offered in evidence the register's record showing probate of a copy of the will and then rested. Then contestant (present appellant), by calling Attorney Wentz and his secretary as witnesses, proved that, after the will was executed by decedent and witnessed by Attorney Wentz and his secretary on June 29, 1956, the will was placed in decedent's possession, decedent stating she was going to place it in her safe deposit box that same day. Contestant further proved,

---

[3] Ella Grady, Eileen B. Grady and Kathleen F. Grady all live in Ireland.

from the Bank's records, that decedent did not enter her box on June 29, 1956 and that she made no entry until approximately three weeks subsequent to the date of the will's execution. Contestant then rested and no further testimony was taken. On August 4, 1960, Judge BOWMAN, despite the waiver by all parties of their rights to a jury trial, directed that a jury trial be held to determine whether (1) decedent had executed a will on June 29, 1956 in the form of the copy of said will submitted by proponent and (2) whether this will remained unrevoked at the time of her death? From the entry of that decree, Mary Murray has taken this appeal.

Two questions are raised: (1) the appealability of the decree directing the jury trial[4] and (2) the statutory authority of the court *on the posture of this record* to direct a jury trial.

Our initial inquiry is whether the decree of the court below is appealable. In *Gelsinger's Appeal*, 2 Walker 196, 197 (an appeal from the direction of an issue to determine the validity of the will) the Court said: "This [direction of an issue] clearly was not final. It neither established, nor set aside the will. It concluded no one, but was simply making progress towards the final decision, which should conclude the rights of the litigants . . . If the Court acted irregularly and illegally, the matter must come up to us on an appeal *after* the case has been disposed of finally in the Court below." (Emphasis supplied.) In *Schwilke's Appeal*, 100 Pa. 628, 631, we said: "Directing the issue is not a definitive decree from which an appeal lies to this court. It is preliminary only. It is merely one step toward obtaining the verdict of a jury on the question of the truthfulness of the facts alleged: [citing cases]."

---

[4] The Bank has filed a motion to quash the appeal on the ground that the decree was an unappealable interlocutory order.

See also: *McCarter's Appeal*, 78 Pa. 401, 402; *Shepard's Estate*, 170 Pa. 323, 326, 32 A. 1040; *Dengler Estate*, 13 Pa. D. & C. 2d 193, 197, 198.

The instant decree is not appealable. As former Chief Justice STERN stated in *Stadler v. Mt. Oliver Borough*, 373 Pa. 316, 317, 318, 95 A. 2d 776: "By a veritable multitude of decisions it has been established that, unless a special right to appeal is expressly given by statute, an appeal will lie only from a definitive order, decree, or judgment which finally determines the action. The court cannot assume such appellate jurisdiction even by consent of the parties: [citing cases]. Nor is an order, judgment or decree final unless it terminates the litigation between the parties to the suit by precluding a party from further action in that court: [citing cases]." The instant decree being interlocutory and unappealable, the Bank's motion to quash must be granted.

Being of the opinion that this appeal must be quashed, ordinarily we would not consider the other question raised, i.e., the authority of the court to grant a jury trial. Under the instant factual situation and inasmuch as the matter must be further litigated, we deem it essential to point out that in our opinion the court below erred in granting a jury trial *on the state of the present record.*

The source of the court's authority, if any, to grant a jury trial must be the Orphans' Court Act of 1951, as amended.[5] The practice, procedure and manner of enlisting the aid of a jury in determining the validity of wills are embraced within Sections 744, 745 and 746 of the Act. Section 744 applies where the matter comes before the court on an appeal or in a proceeding removed from the register. Under the first sentence

---

[5] Act of August 10, 1951, P. L. 1163, as amended by the Act of February 10, 1956, P. L. (1955) 1022, 20 PS §2080.101 et seq.

of Section 744,[6] the testimony taken before the register per se may reveal the existence of a substantial dispute of fact: if it does, the court may *grant* a jury trial, i.e., submit the issue of fact for determination by a jury. Conversely, if the testimony taken before the register does not indicate a substantial dispute of fact, the court has no authority to *refuse to grant* a jury trial and at that stage end the proceeding. It then becomes the duty of the court under the second sentence of Section 744,[7] to hold a *hearing de novo* to determine the existence of a substantial dispute of fact and, depending upon the finding of the existence or non-existence of such dispute of fact, the court may *then* grant or refuse a jury trial.[8]

When the legislature in 1956 amended Section 744 it added thereto the following sentence: "The court, in its discretion, may *impanel* a jury at any stage of the proceedings." (emphasis supplied), and it was in reliance on this sentence that the court below granted a jury trial. In this respect, the court committed error. This sentence simply authorizes a court to *impanel* (i.e., to summon and select a jury), not to *grant* a jury trial (i.e., submit the dispute of fact to a jury for its determination). Any other construction of that sentence destroys the clear meaning of the legislative direction embodied in the rest of Section 744.

Prior to the 1956 amendment of the 1951 Act, supra, three separate hearings to determine the validity of a will were possible; a hearing before the register, a

---

[6] ". . . the court may find, upon the testimony taken before the register, that a substantial dispute of fact exists and grant a jury trial". (20 PS §2080.744).

[7] Unless the parties stipulate the case be heard on the testimony taken before the register.

[8] However, Section 744 does provide that "In *any* event, the court may require witnesses already examined and other witnesses to appear before it." (Emphasis supplied)

hearing before the court to determine preliminarily whether the dispute of fact was substantial and, lastly, a jury trial under Section 745(a) or a trial without jury if the parties waived a jury trial under Section 745(c). Each hearing, in many instances, involved identical testimony, each hearing involved considerable time and expense to the litigants and each hearing created additional delay in reaching a final result. Too often justice delayed became justice denied in this type litigation and expense and delay rendered prohibitive such contests, particularly in small estates.[9] To remedy this situation, the legislature by the addition of the last sentence of Section 744 authorized a court to *impanel* a jury at *any* stage of the proceedings. Such a jury acts in a "stand-by" capacity: if the court, after hearing the testimony in the presence of the impanelled jury, determines as a matter of law that the dispute of fact as to the validity of the will is not substantial, then the court will refuse to permit the jury to pass on the dispute:[10] on the other hand, if the court determines the dispute is substantial, it will permit the jury to determine the dispute.[11] Furthermore, under the authority granted the court, the court need not wait until *all* the testimony is heard: if the court is of the opinion that on the testimony heard, even though incomplete, a substantial dispute of fact has arisen, the court may then grant a jury trial. The court is given wide latitude in determining *when* to *impanel* a jury. Section 744 does not, however, determine the *right* of the court to *grant* a jury trial. The court below erred in its reliance upon the last sentence

---

[9] See: Some Suggested Legislative Changes, President Judge CHARLES KLEIN, Vol. XXIV, Pa. Bar. Assoc. Quarterly, p. 16 (Oct. 1952).

[10] In some respects, such action resembles a nonsuit.

[11] See Section 746(a.1) in connection with the last sentence of Section 744.

of Section 744 as authority for it to *grant* a jury trial; that portion of Section 744 was simply intended to authorize the impanelling of a jury to be available *if the grant of a jury trial became justified.*

Section 745(a), so far as herein pertinent, recognizes that a jury trial is a matter of right to any party in interest in a will contest *if a substantial* dispute of fact arises, while Section 745(c) provides that such right *may* be, and the *manner* in which it will be deemed, waived. In the case at bar, the parties having waived their right to a jury trial, Section 745(a) is not applicable.

The only possible source of authority for the grant of the jury trial in the case at bar must be Section 745(d). That section provides that a court, in the exercise of its discretion, may *"require a jury to decide any issue"* in either one of two situations: (1) "[W]hen there is no right to trial by jury" (i.e., when there is no substantial dispute of fact under Section 745(a)) or (2) when there is a substantial dispute of fact but the parties have waived their right to a jury trial. In the case at bar there is no contention that the court has found the existence of a substantial dispute of fact, even had it been so found, the parties have waived their right to a jury trial. Appellant's argument that a court, on its own motion, can *only* grant a jury trial upon a finding of the existence of a substantial dispute of fact is without merit: the provisions of Section 745(d) completely shatter this argument. A finding of the existence of a substantial dispute of fact is necessary to establish whether a jury trial is a matter of right to the parties in interest.

The court below, under Section 745(d), clearly had the authority, in its discretion, to grant a jury trial to resolve "any" issue of fact: however, *the existence of an "issue of fact" is a prerequisite to the grant of a jury trial* under Section 745(d).

Our initial inquiry is to ascertain whether *upon this record* any "issue of fact" has arisen: if it has, the court below had the statutory authority, under Section 745(d) to grant this jury trial.

Certain proof is essential to establish a destroyed or suppressed will:[12] (1) that testatrix duly and properly executed the original will; (2) that the contents of the executed will were substantially as appears on the copy of the will presented for probate; (3) that, when testatrix died, the will remained undestroyed or unrevoked by her: *Michell v. Low,* 213 Pa. 526, 63 A. 246. The instant record clearly establishes that decedent duly and properly executed her will on June 29, 1956 and that the contents of that will were substantially as set forth in the copy of the will as probated. The difficulty arises in proving the status of that will when decedent died.

In determining such status, we must bear in mind that where a testatrix retains the custody and possession of her will and, after her death, the will cannot be found, a presumption arises, in the absence of proof to the contrary, that the will was revoked or destroyed by the testatrix: *Bates's Estate,* 286 Pa. 583, 134 A. 513.[13] To overcome that presumption, the evidence must be positive, clear and satisfactory: *Dalbey's Estate,* 326 Pa. 285, 192 A. 129.[14]

---

[12] That is, "destroyed" or "suppressed" by some one other than the testator.

[13] *Weber's Estate,* 268 Pa. 7, 110 A. 785; *Glockner v. Glockner,* 263 Pa. 393, 106 A. 731; *Michell v. Low,* supra; *Fallon's Estate,* 214 Pa. 584, 63 A. 889; *Gfeller v. Lappe,* 208 Pa. 48, 57 A. 59; *Stewart's Estate,* 149 Pa. 111, 24 A. 174; *Deaves's Estate,* 140 Pa. 242, 21 A. 395.

[14] *Gardner v. Gardner,* 177 Pa. 218, 35 A. 558; *Glockner v. Glockner,* supra; *Weber's Estate,* supra; Bregy, Intestate, Wills and Estates Acts of 1947, p. 2313, §5.

The record before the chancellor indicates that, at the hearing, proponent offered in evidence: (1) the scrivener's office copy of the will; (2) the record of the register showing probate of the copy[15] as decedent's last will; (3) the grant of letters testamentary to the Bank. Proponent then rested, contending that the burden of going forward with the evidence shifted to contestants.[16] At this point, proponent had proven due execution of the will and substantial identity of the copy of the will and the executed will. Contestant then placed upon the stand the scrivener and his secretary and, through their testimony, proved not only that already proven by proponent but also that the will had been given by the scrivener into decedent's custody and possession. By the Bank's records, contestant then proved that decedent could not have placed the will in her safe deposit box either on the day of its execution or until July 20, 1956 when she next entered the box. The contestant's evidence places the will when last seen in decedent's custody and possession and such evidence remains uncontradicted on this record.

Proponent [the Bank], urging that decedent's will was either destroyed or suppressed by Mrs. Helms, or her counsel, relies on the testimony taken before the register. The hearing before the court was de novo and the record contains no proof to sustain proponent's position. The testimony taken before the register may have contained such proof but such testimony was not part of the record before the court and simply introducing into the record the fact of probate of the will

---

[15] The *testimony* taken before the register was *not* before the chancellor.

[16] Proponent relied on *Szmahl's Estate*, 335 Pa. 89, 6 A. 2d 267; *Plott's Estate*, 335 Pa. 81, 5 A. 2d 901; *Geho's Estate*, 340 Pa. 412, 17 A. 2d 342.

by the register does not bring up such testimony. On the posture of the record before the court below there was an unrebutted factual presumption that the will, last seen in decedent's possession, had been destroyed or revoked by the decedent. Under such circumstances, there was no "issue of fact" for a jury to determine. Absent such "issue of fact", the court lacked authority under Section 745(d) to grant a jury trial to determine whether decedent's will remained unrevoked when she died.[17]

In view of the manifest error in granting a jury trial—an error which cannot *now* be rectified in view of the unappealability of this particular order—it may not be amiss for us to suggest to the court below that it *now* reconsider its grant of a jury trial. In the interests of justice, it would seem appropriate that *both* proponent and contestant be given an opportunity to reopen their respective cases and present whatever testimony may be relevant and pertinent so that the court may have before it a full and complete record upon which to determine, in its discretion, whether there is an "issue of fact", under Section 745(d), which it deems proper to submit for the determination of a jury.

Appeal quashed.

Mr. Justice BELL concurs in the result.

---

[17] There is no evident dispute as to the execution of the will or the substantial identity of the copy and the original will.