## Ervien Will.

Submitted April 28, 1967. Before BELL, C. J., MUSMANNO, JONES, EAGEN, O'BRIEN and ROBERTS, JJ.

reargument refused October 25, 1967.

*Paul P. Wisler, Frank Carano,* and *Wisler, Pearlstine, Talone & Gerber,* for appellant.

*Gilbert P. High,* with him *High, Swartz, Roberts & Seidel,* for appellee.

OPINION BY MR. CHIEF JUSTICE BELL, September 26, 1967:

Luigina B. Ervien died November 10, 1965. Her original will could not be found. Her executors presented to the Register of Wills of Montgomery County for probate, a *conformed* but *unsigned* copy of her last will. That copy provided that in the event testatrix's husband predeceased her, which he did, her residuary estate was to be divided equally between her husband's niece, Doris Ervien Marsh, and her husband's grand-nephew, Ralph Edward Marsh, Jr., with each of whom

she had maintained a close family relationship. Testatrix's only known living relative, Carolina Barbarini, her sister who resided in Italy, and whom she had not seen except for two short visits for 46 years, contested the probate of this copy and claimed testatrix's estate under the intestate laws of Pennsylvania.

The Register of Wills refused to probate the conformed copy of the will and the executors filed an appeal in the Orphans' Court. After a hearing de novo, the Orphans' Court reversed the decision of the Register of Wills and admitted the conformed copy to probate. . Carolina Barbarini thereupon took this appeal.

We have reviewed the record but deem it unnecessary to discuss the evidence or the law governing the probate of a conformed copy of an allegedly lost will. We find no abuse of discretion or error of law.

Decree affirmed, each party to pay own costs.

Mr. Justice COHEN took no part in the consideration or decision of this case.

———

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

The original of the will sought to be probated in this case was executed by Mrs. Luigina Ervien on March 26, 1956. Neither party to this litigation disputes the fact that the will was in her possession on that date. No witness thereafter saw the will, and it was not found among Mrs. Ervien's effects after her death. Under this state of facts, as the orphans' court recognized, there was a presumption that Mrs. Ervien destroyed her will *animo revocandi. Murray Will,* 404 Pa. 120, 129, 171 A. 2d 171, 176 (1961); *Bates's Estate,* 286 Pa. 583, 134 Atl. 513 (1926). This presumption could be overcome only by the presentation of evidence which was "positive, clear and satisfactory", *Murray Will,* supra at 129, 171 A. 2d at 176; *Dalbey's Estate,* 326 Pa. 285, 288, 192 Atl. 129, 130 (1937).

The evidence in fact relied upon by the orphans' court to overcome the presumption of revocation may be summarized as follows: Mrs. Ervien's husband Clarence died in 1956. By virtue of his will she received his share of a family business, the remainder of which belonged and still belongs to his brother Edward. Mrs. Ervien's estate consists almost entirely of the share of family business she inherited from her husband. Both Clarence's will and the will of Mrs. Ervien sought to be probated were executed on March 26, 1956. Each will contained virtually identical provisions disposing of the estate to appellees, Edward's daughter and grandson, if testator were the surviving spouse.

Subsequent to her husband's death, Mrs. Ervien came to rely heavily on Edward's guidance and help in many affairs. In particular, Edward handled for her the sale of her house in 1964. Before moving from the house to the Benson Apartments, she went through her personal papers and a great deal of trash was thrown out by her. At that time Mrs. Ervien was in poor health and her eyesight was extremely weak. She was also extremely careless about her personal effects. After Mrs. Ervien's death the unsigned copy of the will was found in an envelope which also contained an unsigned copy of Clarence's will, her apartment lease and some printed material apparently given by her landlord to each new tenant. The envelope was addressed to Edward and was postmarked February 18, 1964. The envelope was found in a desk drawer upon which Edward had placed a lock for Mrs. Ervien to help her preserve her things from her carelessness.

From the fact that no less than a year before her death Mrs. Ervien placed the unsigned copy of her will in the same envelope with a copy of her husband's will and with her lease, the orphans' court concluded that she deemed it of great value at that time. Then

the court proceeded to reason that Mrs. Ervien could hardly have considered the copy of her will to be of value if she had destroyed the original *animo revocandi*. In addition, the opinion of the court seems to suggest that Mrs. Ervien's poor eyesight, carelessness and moving explain the absence of the will from her effects and that the source of her property, the situation in which she made her will and her relationship to Edward make it unlikely she would have deliberately acted to prevent her estate from passing to Edward's descendants.

All the above inferences are certainly reasonable ones. But none of them flows so compellingly from the facts as to qualify under the "clear" and "positive" elements of the applicable test. The correctness of this latter observation may be appreciated by the following quotation from *Dalbey's Estate,* supra at 288, 192 Atl. at 130, where we held the proponent of a lost will had failed to present sufficient evidence to overcome the presumption of revocation: "The strongest evidence to support the continued existence of his will was certain declarations made by decedent to friends that he had left everything to his wife except two or three dollars. These statements were made at least three days before he died. In the interval decedent and his wife were alone in the house; he was mentally and physically able of availing himself of the opportunity afforded to revoke the will. Under such circumstances the presumption of revocation remains as a bar to probate of the alleged will."

The stringency of the rule is similarly illustrated by *Bates's Estate,* supra, where even the fact that the will was executed one day before the death of the alleged testator was held insufficient to overcome the presumption.*

---

* Compare *Foster's Appeal,* 87 Pa. 67 (1878); *Glockner v. Glockner,* 263 Pa. 393, 106 Atl. 731 (1919).

Surely, if direct evidence of positive testamentary declarations within a few days of death is insufficient to overcome the presumption, totally circumstantial evidence—none of it pointing specifically to the decedent's state of mind within even a year of her death—is also insufficient. Thus the majority is in error in concluding that the orphans' court correctly probated the copy of Mrs. Ervien's will.

Accordingly, I dissent.

Mr. Justice JONES joins in this dissenting opinion.

