J. A29012/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE:  ESTATE OF | : | IN THE SUPERIOR COURT OF |
| PETER MIHOLOVICH A/K/A | : | PENNSYLVANIA |
| PETER R. MIHOLOVICH A/K/A | : | |
| PETE MICHOLOVICH | : | |
| | : | |
| APPEAL OF:  PATRICIA BALZER, | : | No. 1865 WDA 2014 |
| | : | |
| Appellant | : | |

Appeal from the Order Entered October 29, 2014,
in the Court of Common Pleas of Westmoreland County
Orphans' Court Division at No. 65-10-0928

BEFORE:  FORD ELLIOTT, P.J.E., BOWES AND MUSMANNO, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED FEBRUARY 19, 2016**

Patricia Balzer appeals from the October 29, 2014 order which entered a copy of her father's, Peter Miholovich (hereinafter "testator"), Last Will and Testament into probate.  We affirm.

The trial court provided the following relevant facts and procedural history:

> Peter Miholovich, a/k/a Peter R. Miholovich, a/k/a Pete Miholovich, the decedent (hereinafter "Decedent,"), died on February 17, 2010.  He had four children:  Katherine Duriga, Patricia Balzer, Alex Miholovich and Edward Miholovich.  On October 8, 2013, letters of administration were granted to Katherine Duriga.  Following Ms. Duriga's appointment as Administratrix of the Estate, a copy of what Petitioner purports is the last notarized Will of Decedent was located.  The Will, dated May 27, 2003, names Ms. Duriga as Executrix of Decedent's estate.  The purported last Will distributes all

household furnishings to Katherine Duriga and the rest, residue and remainder of the estate to Katherine Duriga, Alex Miholovich and Edward Miholovich in equal shares. The alleged Will expressly disinherits Patricia Balzer.

Ms. Balzer has filed an Answer to the Petition of Ms. Duriga, wherein she alleges that Decedent destroyed his Will. A hearing occurred before the Court on April 9, 2014, relative to the Petition and Answer. Thereafter, Ms. Balzer filed a Memorandum of Law in which counsel on her behalf argued that when a decedent's original Will cannot be found, a presumption arises that the testator himself destroyed the Will, and the burden of overcoming the presumption rests upon the proponent of the Will. Counsel for Ms. Duriga filed a Brief wherein Ms. Duriga countered that any presumption of destruction of the Will should not arise, because the Will was in the possession of Ms. Duriga, not the Decedent, at the time of Decedent's death. In her Brief, Ms. Duriga suggests that the Will was destroyed by Patricia Balzer.

Trial court opinion and order, 10/29/14 at 1-2. Following the April 9, 2014 hearing, the trial court issued an order and opinion admitting the testator's will dated May 27, 2003, into probate on October 29, 2014.[1] Appellant filed a notice of appeal on November 12, 2014. On November 14, 2014, the trial court ordered appellant to file a concise statement of matters complained of on appeal, pursuant to Pa.R.A.P. 1925(b). Appellant complied with the trial court's order on December 5, 2014. On December 10, 2014, the trial court

---

[1] An amended order, dated November 7, 2014, was issued by the trial court in order to correct a typographical error in the original order.

filed an opinion pursuant to Pa.R.A.P. 1925(a) in which it incorporated language from the October 29, 2014 opinion and order.

Appellant raises the following issues for our review:

I. Whether the trial court erred in failing to apply the presumption of testator revocation by concluding the testator did not have "ready access" to the stored Will?

II. Whether the trial court erred by admitting the copy of the Will without first finding the proponent had explained the Will's nonproduction?

Appellant's brief at 4.

When addressing appellant's issues, we are held to the following standard of review:

> "Our standard of review of an orphans' court's decision is deferential." **In re Estate of Strahsmeier**, 54 A.3d 359, 362 (Pa.Super.2012). When reviewing an orphans' court decree, this Court must determine whether the record is free from legal error and whether the orphans' court's findings are supported by the record. **Id.** at 362-363. Because the orphans' court sits as the finder of fact, it determines the credibility of the witnesses and, on review, this Court will not reverse its credibility determinations absent an abuse of discretion. **Id.** at 363. However, this Court is not bound to give the same deference to the orphan's court conclusions of law. **Id.** (quotation marks and citation omitted). Where the rules of law on which the orphans' court relied are palpably wrong or clearly inapplicable, we will reverse the court's decree. **Id.** (quotation marks and citation omitted). Moreover, we point out that an abuse of discretion is not merely an error of judgment. However, if in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be

> manifestly unreasonable or the product of partiality, prejudice, bias, or ill will, discretion has been abused. ***Id.*** (citation omitted).

***In re Estate of Zeevering***, 78 A.3d 1106, 1108 (Pa.Super. 2013), ***appeal denied***, 94 A.3d 1010 (Pa. 2014).

In her first issue for our review, appellant avers that the trial court erred by failing to find that the testator revoked his will. We must first determine if the testator had "ready access" to the will prior to his death, and by so doing, determine whether the presumption applies to this case. "Our Supreme Court has repeatedly held that 'where a testator retains the custody and possession of his will and, after his death, the will cannot be found, a presumption arises, in the absence of proof to the contrary, that the will was revoked or destroyed by the testator." ***In re Estate of Janosky***, 827 A.2d 512, 519 (Pa.Super. 2013), citing ***In re Estate of Murray***, 171 A.2d 171, 176 (Pa. 1961) (citations omitted). Our cases indicate that if a testator has "ready access" to the will prior to his death, it is tantamount to the testator having custody of the will. ***See In re Estate of Mammana***, 564 A.2d 978, 982 (Pa.Super. 1989), ***appeal denied***, 578 A.2d 929 (Pa. 1990) (citations omitted).

In the instant appeal, we agree with the trial court that while the will was stored in Duriga's desk in the testator's house, he did not have ready access to the will. The trial court noted the following facts:

> After the Will was signed, [the testator's] attorney made a copy of the Will and sent the original to [the

- 4 -

> testator], in a letter directed to him. Ms. Duriga testified that she was there when [the testator] received the letter enclosing the original Will. Specifically, Ms. Duriga recalled handing her father the letter, at which time he handed the letter and Will back to her and told her, "It's yours to keep. You keep it."

Trial court order and opinion, 10/29/14 at 3. Duriga testified that at the time she received the will from her father, she and her father were living in the same residence. (Notes of testimony, 4/9/14 at 12, 21.) Duriga also testified that, after initially taking the will to her bedroom, she ultimately decided to store it in her desk, which was located in the television room. (*Id.* at 14.) The desk was not locked, and was accessible to anyone in the house. (*Id.* at 26.) The testator spent a sizable amount of his time in the television room. (*Id.* at 14.)

Despite these facts, the trial court also found the following as a matter of fact:

> . . . [Duriga] had never seen her father access the desk, and she testified that with regard to accessing the desk, she believed her father was "kind of like afraid of it," because he "just didn't like to get around that stuff."[2] There was no testimony that anyone had ever seen the [testator] access the desk. There was no testimony that anyone had ever seen [the testator] destroy the Will. There was no testimony that [the testator] knew where the Will was kept.

---

[2] At oral argument, it was alleged that the testator was afraid of the computer Duriga kept on her desk.

Trial court opinion and order, 10/29/14 at 3. The trial court expanded further in its findings of fact regarding the testator and his access to Duriga's desk:

> Duriga's testimony with regard to receiving the Will and handing it to her father, as well as her stowing it without his knowledge of its location, as noted, was credible and unrebutted. Her testimony, moreover, supports an inference that her father regarded the desk in which the Will was stowed as [] Duriga's property, and regarded that area as one in which her privacy would be respected. Other testimony produced corroborates the fact that the [testator], in the years between the time the Will was executed and the time of his death, preferred to have others handle his checkbook and other business papers. This attitude is consistent with [] Duriga's description of her father's actions with regard to the Will and its storage.

*Id.* at 4. Based on the trial court's factual findings, we agree that the evidence does not establish that the testator had ready access to the will.

We now turn to appellant's second issue for our review, in which appellant avers that Duriga was unable to meet her burden of proof, as will proponent, in having a copy of the lost will admitted into probate. As noted above, the testator did not have ready access to the will. In such cases,

> . . . if a will is lost while in the hands of one other than the decedent, it is presumed that the person who had possession of it lost the document. **See Thompson v. Dobbs**, 234 S.W.2d 939 (Tex. Civ. App. 1950). Thus, we have no dispute with the tenet in the law that the failure to find a will, after a careful and exhaustive search, raises a presumption that the decedent destroyed it with the intent to revoke it. **Murray Will** [at 175]. However, such a presumption is rebutted by proof that after the

execution of the will, it was deposited by the testator or testatrix with a custodian (in this case, an attorney) and that the decedent did not thereafter have it in his/her possession or have access to it. *See In re Pinney's Will*, 72 N.Y.S.2d 895 (1947).

*Mammana*, 564 A.2d at 981-982.

In this Commonwealth, the proof necessary to permit the submission of a copy of a will destroyed by one other than the decedent has been articulated by Mr. Justice Benjamin R. Jones in *Murray Will*, 404 Pa. 120, 129 & n. 12, 171 A.2d 171, 175 & n. 12 (1961) as follows:

Certain proof is essential to establish a destroyed or suppressed will:[Footnote 12] (1) that [testator] duly and properly executed the original will; (2) that the contents of the executed will were substantially as appears on the copy of the will presented for probate; (3) that, when [testator] died, the will remained undestroyed or unrevoked by [him]: *Michelle v. Low*, 213 Pa. 526, 63 A. 246.

[Footnote 12] That is, "destroyed" or "suppressed" by some one [sic] other than the [testator].

*Mammana*, 564 A.2d at 980.

As previously noted, we may only disturb the trial court's order if we find that the trial court abused its discretion. Absent such a finding, we are bound by the trial court's findings of fact and credibility determinations. Here, we agree with the trial court, which found that the proponent of the will, Duriga, is able to meet all three elements required to admit a copy of a

lost will into probate. The first two elements are not in dispute. The testator properly executed his original will and the contents of the executed will are substantially the same as the copy presented for probate.[3] The only element in dispute is whether the testator had destroyed or revoked his will prior to his death.

The trial court, as noted above, found Duriga's testimony regarding her storage of the will and testator not accessing the will prior to his death to be credible. The trial court also heard testimony from appellant, as well as her husband, Joseph Balzer, which the trial court found to be incredible. As noted above, the trial court determined that the evidence indicated that the testator's preference was to have others take care of his business and financial affairs directly contradicts Mr. Balzer's testimony that the testator opened a letter addressed to Duriga and, upon discovering that it contained a copy of his will, expressed his intent to, "get rid of this one, too."[4] (Notes of testimony, 4/9/14 at 72.)

---

[3] The copy of the will presented for probate is a photocopy of the original will bearing the signature of the testator and two witnesses, John M. O'Connell, Jr., and Katherine Duriga. The photocopy also depicts that the original will was notarized by Kathleen M. Herrle.

[4] Mr. Balzer also testified that, upon hearing complaints from the testator that Duriga and Ed Miholovich, one of the testator's sons, were failing to pay the testator's bills on time, he suggested that the testator should "take them out of the will." (Notes of testimony, 4/9/14 at 71.) Mr. Balzer testified that the testator told him that he would not be able to do so because he already destroyed his will. (*Id.*)

Duriga presented testimony that contradicted the Balzers' claims. The will that was executed in 2003 contained a clause stating that appellant was not due to inherit any of her father's estate after his death. The testator and appellant were estranged from one another for several years until the testator reached out to appellant at Duriga's suggestion; however, Duriga testified that the change in circumstances did not compel the testator to revoke or revise his will.

> Q: Can you tell the Court when it was that you asked your father if he wanted to change his will?
>
> A: My dad didn't talk to my sister for several years, and he had surgery, and I convinced him that he should start talking to her again. And after he started talking to her, I asked him three separate times if he wanted to change his will, and he said no, she has enough. And he meant money.
>
> Q: When did your father have surgery?
>
> A: He was 87 years old when he had surgery, he had hernia surgery.
>
> Q: How old was he when he passed away?
>
> A: 95.
>
> Q: So it would have been seven or eight years prior to his death that you asked him if he wanted to change his will?
>
> A: No. It would have probably been four or five years before he died -- anywhere between four years and two years, because I kept asking him.

> Q: And did you say you asked him three separate times?
>
> A: At least three different times.
>
> Q: And his answer was the same each time?
>
> A: Yes.
>
> Q: And what was that answer?
>
> A: No.

*Id.* at 19-20. Furthermore, Duriga also testified that her father discussed all of his business affairs with her. (*Id.* at 20.) The trial court found Duriga's testimony to be credible. Therefore, we find that the trial court did not abuse its discretion when it concluded that the testator did not have ready access to his will, and we further find that the trial court did not abuse its discretion by admitting a copy of the lost will to probate.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/19/2016